Statement of Facts.

ELIZ. CAMPBELL v. FRANKFORD ETC. RY. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 8, 1891—Decided January 26, 1891.
[To be reported.]

(a) The plaintiff, while crossing a street at night, stepped into a depres-
sion in the paving, extending under the track of a passenger railway
company. Her foot thus getting under one of the rails, she was trip-
ped up thereby, fell and was injured.

(b) It was the duty of the railway company to keep the paving in repair,
but the depression in question was maintained under the direction of
the city, as a means of draining the street, and it was kept in the condi-
tion in which the city required it to be kept:

1. The railway company, being subject to the city's control, as to the
maintenance and repair of the street, was not chargeable with negli-
gence in maintaining the drain as directed by the city, and was not
responsible for the plaintiff's injury, if its sole cause was the existence
of the drain.

2. The railway company would be liable for the injury, if caused by its
negligence in failing to keep the drain in repair; but the condition in
which it maintained the drain as prescribed by the city cannot be evi-
dence of such negligence, nor can the occurrence there of other acci-
dents while so maintained.

3. Nor, is an alteration in the size of the drain, after the accident to the
plaintiff, made by the city or under its direction, in connection with re-
pairs rendered necessary by the tearing up of the street for purposes
not connected with the railway, evidence of such negligence.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 406 January Term 1890, Sup. Ct.; court below, No. 50
September Term 1889, C. P. No. 3.

On September 18, 1889, Elizabeth Campbell brought trespass
against the " Frankford & Southwark City Railway Company,"
for negligence causing personal injuries to the plaintiff. The
statement of claim filed averred a duty resting upon the de-
fendant company so to construct and maintain its tracks, laid
upon Front street, Philadelphia, and to maintain the paving of
said street, as to preserve the even, proper and established

grade upon its surface; and charged a neglect of this duty, in consequence of which there was, on April 20, 1889, at a certain described point on said street, a depression in its surface, three feet in width, to the depth of five inches and more, below the top of the easternmost rail of said tracks, which crossed said depression at right angles, constituting a public nuisance, dangerous to the public using the street. The statement averred, further, that the plaintiff was crossing Front street about eight o'clock P. M. on April 20, 1889, "and, accidentally stepping into the above-described depression, her foot or feet came in contact with the said easternmost rail of the defendant's track, and by reason of the projection or elevation of the said rail above the surface of the street, as the same is depressed at that point below the level of the top surface of the said rail, she was thrown violently across said rail upon the cobble stone pavement and received in her fall serious and dangerous injuries," etc. The defendant pleaded not guilty.

At the trial on January 30, 1890, the following facts were shown:

On Saturday evening, April 20, 1889, the plaintiff, a woman about forty-one years of age, and her daughter, were upon the east side of Front street, and started to cross over to the west side. It was raining and they were without umbrellas, and, as they were in a hurry to reach shelter, and the regular crossing way at that point was crowded with people carrying umbrellas, they diverged therefrom a few feet. Upon reaching the easternmost rail of the defendant's tracks, which ran along that street, the plaintiff stepped into a depression in the paving of the street beneath the rail, tripped on the rail and fell to the ground, receiving very severe injuries. She described the accident, while testifying on behalf of herself, as follows:

" Q. How did the accident happen to you? A. I went into that hole and fell frontwards—I fell right over. Q. What was it that made you fall? A. It was the hole in the street and over the track. My feet went under. Q. Under what? A. Under the track. Q. By that I suppose you mean against the rail? A. Yes, sir; certainly. Q. That tripped you up? A. Yes, sir; and caused me to fall. Q. What happened then? A. I was knocked senseless. When I fell, I didn't know anything until I was picked up."

The daughter testified thus, on behalf of the plaintiff :

" Q. What happened to your mother? Did she fall and stumble ? A. Yes, sir ; her feet went under the track, and it threw her. Q. Can you tell how your mother came to fall there, and trip over that place ? A. I suppose on account of no light being there."

The plaintiff, also, testified that it was very dark in that locality, and that she was not aware of the existence of the depression until she stepped into it.

Witnesses for the plaintiff testified further, that the depression made an opening under the rail, a little more than three feet in width, and a little less than five inches in depth below the top of the rail ; that the bottom of the rail was bare, the wooden stringer under it having apparently rotted away ; that the surface, in the depression, was rough, and there were some loose cobble stones therein ; that, at the time of the accident, the hole under the rail was choked with mud, and water would accumulate there during a rainfall, but that it had since been cleared out so that water could run under the rail to the gutter at the side of the street, and that alterations had been made in the paving which reduced the width and depth of the depression. The testimony of some of the plaintiff's witnesses tended to show that the alterations spoken of were made at a time when the street was " all torn up," in connection with the putting in of telegraph or telephone wires. There was no testimony for the plaintiff to show when or by whom the depression was made, though one of her witnessess said that it looked as if produced by the sinking of the cobble stones through the action of water. It was claimed by the defendant's counsel that a photograph of the locality, put in evidence by the plaintiff, showed that the depression, situated about five feet above a foot crossing, extended from the defendant's tracks toward the side of the street. The photograph was not reproduced in the paper-books. One of the plaintiff's witnesses testified that a number of accidents, similar to that of the plaintiff, had occurred at the same place and from the same cause. There was some evidence that the foot-crossing spoken of was not in good repair.

The plaintiff put in evidence the charter of the defendant company, subjecting it to the ordinances of the city, and also

### Charge of Court below.

certain ordinances making it the duty of street railway companies to re-pave and repair streets occupied by them, conforming to the established surveys, regulations and gradients therein.

The testimony for the defendant tended to show that the depression spoken of by the plaintiff's witnesses was a "flat gutter" or drain, made many years ago, for the purpose of carrying off to the sewer inlet, at the side of the street, rain water that would run down Front street between the defendant's tracks, the object being to prevent such water from flooding the foot-crossing, a few feet below; that it was maintained under the control, supervision and approval of the highway department of the city, whose officers inspected it from time to time, and whenever it needed repairing so notified the defendant; that the opening under the defendant's rail was caused, not by the rotting away of the stringer, but by the cutting of it so as to allow the water to run under it. Several officials of the highway department testified that they considered the drain safe and in proper repair at the time of the plaintiff's accident. On cross-examination, some of defendant's witnesses admitted that arrangements could have been made to guard against accidents by covering the depression with a metal frame work, laid at the level of the paving on each side thereof. There was testimony for the defendant tending to show, further, that the cleaning of accumulations of mud out of the drain was performed at regular intervals, and that, on the evening when the plaintiff was injured, Front street was well lighted with both gas and electric lights.

At the close of the testimony, the court, FINLETTER, P. J., charged the jury in part as follows:

In this case, the complaint of the plaintiff is two-fold, and I desire to call your attention to the two-fold character of the complaint, because you must consider them both and determine upon both in the light of the evidence and the law.

The first allegation of the plaintiff is that the depression or drain, or whatever the evidence seems to designate this particular place, was out of repair and defective, and that in consequence of that want of repair and defectiveness the street itself was defective and out of repair. Then, again, it is al-

Charge of Court below.

leged that there was a depression in the street which sunk the roadbed three or four or five or six inches below the top of the rail, and the plaintiffs have contended that that was erected or maintained by the defendants. .

The evidence upon which we all must, I think, agree, is that the depression has existed for many years, and was used by the city as a drain to relieve the crossing, which was a few feet below it, and further, that it was supervised and controlled by the public officers, who, when out of repair, reported it to the proper department, and gave notice thereof to the defendants.

I am compelled to say, in this case, there is no evidence to show that the defendants constructed this drain or took control over it, and until such evidence appears the presumption must be that it was put there by the city. Even if the drain was constructed by defendants, if accepted by the city and supervised and controlled by the city authorities, the defendants are not responsible for its construction, or for any injury which may arise from its construction and maintenance alone. If, therefore, the injury to the plaintiff was caused by the depression of the drain alone, the plaintiff cannot recover. ·

The defendants must use their railway in conformity to the right of the city to make suitable drainage. The plaintiff, as I have already said, alleged and has attempted to prove that the depression or drainage was in a defective condition and out of repair, and thereby the street was out of repair, and being out of repair the rails of the railway were in such condition that the plaintiff tripped over them and was injured. No matter who constructed the drain or controlled it, or for what purpose it was used, it was the duty of the defendants to keep it in good repair, and if, in consequence of its being out of repair, the plaintiff was injured, the defendants were negligent.

The first duty, therefore, of the jury is to consider the question, " Was it out of repair?" and, secondly, " Did the want of repair solely cause the accident complained of?" Both of these questions are very important, and should be considered by the jury alone in the light of the evidence. If the evidence does not show the drain was out of repair, the plaintiff cannot recover, nor can she recover unless the jury should find from the evidence that the drain, being out of repair, caused the accident to her upon that occasion.

If you are satisfied from the evidence that the plaintiff was injured solely by the defective condition of the drain or depression, then the question arises, was the plaintiff herself negligent? [Every one has the right to use any portion of the highways, footways, or roadbeds, without regard to the crossings.] [3] The only obligation upon those who use the streets, in any manner, is that they must do so with proper care and watchfulness, and with proper regard to the time and circumstances under which they are crossing. . . . .

Some question has been raised in this case as to the manner in which that particular point was lighted. If it were well lighted, then it is for the jury to say whether a person using ordinary care and watchfulness could have tripped up over this obstruction or not. If it were not lighted,—if it were dark,—then there was greater care and greater watchfulness required by any one who attempted to cross the street at that particular place. If the plaintiff did not use all the care and watchfulness that the circumstances required, she was negligent, and cannot recover if her negligence contributed to the accident. She was required to use all the care and watchfulness which a person ordinarily careful would have used under the circumstances. . . .

The defendants request the court to charge :

4. That, it appearing from the testimony of the plaintiff's witnesses, that at the time of the accident she was not crossing the street in the usual, ordinary way over the flagstone or crossing-stone, but over said depression, she was therefore guilty of contributory negligence and cannot recover, and therefore your verdict should be for the defendants.

Answer : Refused.[1]

Last. That, under all the evidence, your verdict must be for the defendants.

Answer : Refused.[2]

The jury rendered a verdict for the plaintiff for $6,000. A rule for a new trial was discharged by the court in the following opinion, FINLETTER, P. J. :

The statement of the plaintiff sufficiently avers the cause of action to be that the highway was out of repair at the locus in quo of the accident, and that the injury occurred in consequence thereof.

Opinion of Court below.

It is conceded by the defendants that it was their duty to keep the street in good condition, and to make the necessary repairs for that purpose.

The jury was instructed as follows: "If, therefore, the injury to the plaintiff was caused by the depression of the drain alone, the plaintiff cannot recover. It was the duty of the defendants to keep the drain in good repair, and if, in consequence of its being out of repair, the plaintiff was injured, the defendants were negligent."

The only questions submitted to the jury were the condition of the street at that point, and the cause of the accident, both of which were found against the defendants. We have, then, only to consider whether or not there was sufficient evidence to sustain the finding of the jury.

It should be recollected that whilst the defendants were not liable for the depression which the drain made, yet if it caused a projection of the rail which was likely to cause tripping or stumbling, there was greater care imposed thereby upon them to keep it in repair. There was evidence that the stringer under the rail at the drain had rotted away, and evidence of the condition of the drain itself, such as its length, breadth, and depth, and of the loose cobble stones on it, and of its subsequent repair by the defendants, which reduced its size in every respect, and also of several accidents like the plaintiff's, which had occurred at that place, from which the jury might have found that the drain and street were out of repair and dangerous. We are not prepared to say that this evidence was insufficient.

The question of the negligence of the plaintiff was for the jury. It depended upon the circumstances and the inferences which might be deduced therefrom, and how they were likely to affect the action of the plaintiff, exercising the care which a reasonably careful person would have used under like conditions. It is only where the facts and inferences therefrom are fixed and certain, that the court is authorized to give binding instructions to the jury.

The rule is discharged.

—Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The refusal of the defendant's points.[1] [2]

3. The portion of the charge embraced in [ ] [3]

Arguments.

*Mr. John G. Johnson* (with him *Mr. William Henry Lex*), for the appellant:

1. Our principal objection is that the judge permitted the jury to find a fact without any evidence to support the finding. He conceded that the defendant was obliged to submit to the mode of drainage adopted by the city, and was under no duty as to the gutter underneath its rail, except to keep the same in repair. It was necessary that there should be a gutter, an elevation of the rail and an opening thereunder, and the testimony of the plaintiff, as well as her statement of claim, shows that it was by reason of the existence of that opening that she tripped and fell. There was no evidence from which the jury would be justified in drawing the inference that the drain or street was out of repair, in any way which conduced to the accident. The case, therefore, should not have been submitted to the jury : Erie etc. R. Co. v. Smith, 125 Pa. 260 ; Citizens Ry. Co. v. Ketcham, 122 Pa. 237 ; Lombard Ry. Co. v. Christian, 124 Pa. 114.

2. Moreover, the plaintiff was guilty of contributory negligence in leaving the regular crossing, and in attempting to cross the street, with which she was unfamiliar, in a zigzag course. If the street was lighted at the place of the accident, she could have fallen only through gross neglect in not looking ahead of her. On the other hand, if it was dark, as she claimed, it was her duty to keep to the regular crossing, and not to attempt to cross an unfamiliar, unlighted street, at an unusual place : 2 Dillon on Mun. Corp., 1025 ; Delaware etc. R. Co. v. Cadow, 120 Pa. 559 ; Altoona v. Lotz, 114 Pa. 238 ; Fleming v. Lock Haven, 15 W. N. 216 ; Barnes v. Sowden, 119 Pa. 53 ; Erie City v. Magill, 101 Pa. 616 ; Robb v. Connellsville Bor., 137 Pa. 42 ; King v. Thompson, 87 Pa. 365.

*Mr. Lincoln L. Eyre* (with him *Mr. B. F. Hughes*), for the appellee :

1. Assuming that the trial judge was right in charging the jury as strongly as he did in favor of the defence set up, that the depression was a lawful drain, he was also right in submitting the case to the jury, on the question whether the drain was out of repair, and whether the want of repair caused the accident. The testimony on this point was abundant. What

caused the plaintiff to stumble or trip, and finally to catch her foot against the stringer? Was it a loose stone, or the deceptive mud and water in the hole, or the unnecessary depth or width, caused by lack of proper repair? Was it not the duty of the defendant, in any event, to place a metal cover or guard of some sort over the drain, if drain it was? Were not these all questions for the jury? The authorities cited for the appellant have little force as applying to this case. "When material facts are disputed, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what they are:" Penna. R. Co. v. Werner, 89 Pa. 64; Penna. R. Co. v. Horst, 110 Pa. 230; Neslie v. Railway Co., 113 Pa. 300; Corbalis v. Newberry Tp., 132 Pa. 15; Citizens Ry. Co. v. Ketcham, 122 Pa. 228. Under these authorities, if there was any evidence of want of repair, the question of the defendant's negligence was for the jury.

2. On the status of the so-called drain, however, we submit that the credibility of the defendant's witnesses was for the jury, irrespective of the question of repair. The defendant admits its obligation to keep this highway in a safe condition for public use. Giving, then, the fullest force to the testimony of its witnesses, no defence is presented thereby. The defendant shows no statute, municipal ordinance, city plan, or order, either written or verbal, given to the defendant by the proper authorities, requiring or authorizing the existence of the depression for purposes of drainage. But, even if the testimony of defendant's witness did present a defence, no presumption of law would arise therefrom, but a question of fact. In neither case could the court have taken the issue from the jury. The only contributory negligence charged against the plaintiff is, that she did not use the regular crossing. In view of the circumstances stated in her testimony as constituting her reasons for leaving it, and the evidence there was in the case as to that crossing's being dangerous and out of repair, the standard of duty was a shifting one, and the question was for the jury: Born v. Plankroad Co., 101 Pa. 336. It is well established that citizens may use all parts of the highway, subject to the duty of more or less care according to the circumstances, and the crossing of a street elsewhere than at an established foot-crossing, is not of itself negligence: Monongahela City v.

Opinion of the Court.

Fischer, 111 Pa. 9; Oakland Ry. Co. v. Fielding, 48 Pa. 320; Stewart v. Alcorn, 2 W. N. 401; Raymond v. Lowell, 6 Cush. 524; Boss v. Litton, 5 C. & P. 407; Cotterill v. Starkey, 8 C. & P. 691; Coombe v. Purrington, 42 Me. 332.

OPINION, MR. JUSTICE WILLIAMS:

The charge of the learned judge of the court below correctly stated the legal principles by which the liability of the defendant company should be determined, and, if there was evidence. on which the verdict may fairly rest, the judgment ought not to be disturbed. The last point submitted by defendant's counsel asked the court to instruct the jury that there was not such evidence, and that their verdict ought to be for the defendant. The refusal of this point raises the only question that it is important now to consider.

There was very little conflict in the evidence, and the facts were not in controversy. The plaintiff was passing up Front street, in the city of Philadelphia, on the 20th of April, 1889, at a little after 8 o'clock in the evening. As she came to the intersection of Front and Dauphin streets, she left the footwalk, and started to cross diagonally over the intersection to the other side of Front street. When nearly over, she stepped into a depression in the pavement about five inches in depth, across which one track of defendant's road passed. Her foot caught in an opening under the rail in this depression, and she fell and received the injuries for which she is now seeking to recover. Under the ordinances of the city, it was the duty of the defendant to keep the pavement along its road in good repair, and the theory on which the plaintiff sought to hold the defendant for the injury she had received, was that this duty had been neglected, and the depression in the pavement and the opening under the rail were due to the want of care of the company over the pavements at this point.

The plaintiff gave a circumstantial account of the manner in which she was hurt. She stated that she fell because she " went into that hole " in the pavement, and her feet went under the track of the defendant's road so that she was "tripped up " and fell forward. Several witnesses testified to the existence and depth of the depression, and to the fact that there was an open space between the bottom of the depression and

Opinion of the Court.

the bottom of the rail. This made the plaintiff's case. The defendant did not deny any of the facts shown, but proved clearly that the depression in the pavement and the opening under the rail were made under the direction of the city, to serve as a surface drain or outlet for water coming down the street, and to conduct it into the sewer. The depression and the opening were thus shown to be due, not to the negligence of the company, but to the system of surface drainage maintained by the city. This was a complete answer to the plaintiff's case, and the learned judge so regarded it, for he said to the jury: "I am compelled to say, in this case, there is no evidence to show that the defendants constructed this drain, or took control over it . . . . If, therefore, the injury to the plaintiff was caused by the drain alone, the plaintiff cannot recover." This was clearly right, but he went on to say further : "It was the duty of the defendants to keep it (the drain) in good repair, and if, in consequence of its being out of repair, the plaintiff was injured, the defendants were negligent." He then submitted the question to the jury, whether or not the defendant company had kept the drain in repair.

We have looked through the evidence, but we have been unable to find a particle of testimony to justify the submission of this question. The evidence showed that the drain was kept in the condition the city required, and because it was in that condition, with the opening under the rail for the water to escape, the accident had happened. On the motion for a new trial, the attention of the learned judge was again called to this subject, and, in his opinion dismissing the motion, he collects the circumstances which he considers sufficient to justify the submission, and states them thus : " There was evidence that the stringer under the rail had rotted away, and evidence of the condition of the drain itself, such as its length, breadth, and depth, and of the loose cobble stones in it, and its subsequent repair by the defendants, which reduced its size in every respect, and also of several accidents like the plaintiff's." But the evidence showed, and the learned judge so instructed the jury, that the opening under the rail, the depression in the pavement, its length, breadth, and depth, were fixed and directed by the city, and maintained in the condition required by the city. The repairs by which it was reduced in size were rendered neces-

sary by its being torn up for the purpose of setting a lamp-post which encroached upon the space which the drain had previously occupied. This also was done by the city, or under its direction. The fact that other accidents had happened at this drain, tended to show that the city maintained a dangerous system of surface drainage, but threw no light on the state of repair in which the drain was kept by the company. Not one of the circumstances referred to, therefore, justified the submission of the question to the jury, or gives the least support to the verdict rendered.

As there was no evidence that tended to show negligence on the part of the defendant, the plaintiff had no case, and the last point, which asked a direction to find in favor of the defendant, should have been affirmed. To submit a question to a jury, in a case like the present, when there is not evidence enough to support a verdict, is to open the door for a verdict that is prompted by sympathy, and that rests rather on the necessities of the plaintiff and the ability of the defendant than on an impartial examination of the testimony. Jurors have a right to conclude, when a question is thus left to their determination, that, in the opinion of the court, there is sufficient proof of the fact to justify them in finding it, and it is not to be wondered at that the presence of suffering and poverty should lead them to act upon such conclusion, without waiting to investigate for themselves.

> The second assignment of error is sustained, and the judgment is reversed.

February 16, 1891, motion for a re-argument and for a venire facias de novo refused.