# DISTRICT OF COLUMBIA *v.* CATON.

STREET RAILWAY; DANGEROUS TRACK; GENERAL PLAN; OF CONSTRUCTION; APPROVAL BY DISTRICT; LIABILITY OF DISTRICT; DISCRETIONARY AND MINISTERIAL FUNCTIONS; INSTRUCTIONS.

1. Where an accident was due to the wheels of a wagon getting caught between the rails of a street car·track and the ends of a "tie-rod" consisting of a lighter track rail fastened to the ties and crossing the tracks at right angles but leaving a space 3 or 3½ inches from the rails at each end, through which the flanges of the car wheels can pass, such tie-rods being used on heavy grades about 50 feet apart to prevent surface clay and gravel from washing out between tracks, and this construction was in accordance with the general plan originally adopted by the company but supervised and approved by the District, as provided by Acts of Congress February 18, 1875 (18 Stat. at L. 328, chap. 82), May 3, 1905 (33 Stat. at L. 981, chap. 1412), the street railway company cannot be held liable for negligence, where it does not appear that there was any safer plan for construction in common or known use, and nothing more is shown on this point than that wheels had caught in such spaces on one or two previous occasions. (Chief Justice SMYTH dissenting.)

2. In selecting and adopting a general plan of public improvement a municipal corporation exercises judicial discretion, for which it cannot be held liable; but in carrying out such plan it acts ministerially, and is liable for failure to perform the work in a reasonably safe manner.

3. The District of Columbia is liable for failure to maintain streets in a reasonably safe condition, whether the dangerous condition is the result of a general plan of improvement or not, as the plan cannot be held to be a reasonable one if it left a street in a dangerous and unsafe condition. (Citing *Finney* v. *District of Columbia*, 47 App. D. C. 48; *District of Columbia* v. *Duryee*, 29 App. D. C. 327, 10 Ann. Cas. 675; *District of Columbia* v. *Sullivan*, 11 App. D. C. 533, 541.)

4. Where instructions were given and a case tried upon the theory of the joint liability of a railway company and the District of Columbia, a judgment against the defendants should be reversed where the

NOTE.—On the question of liability of street railway company for defects in track or street, in general, see notes in 52 L.R.A. 448, and 15 L.R.A. (N.S.) 840.

railway company is found not liable, and the separate liability of the District was not so clearly presented as to obviate possible confusion in the minds of the jury.

No. 3117.   Submitted March 8, 1918.   Decided May 27, 1918.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for damages for personal injuries.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a judgment in favor of appellee, Joseph C. Caton, hereafter referred to as plaintiff, in the supreme court of the District of Columbia in a suit to recover damages for personal injuries sustained on one of the streets of the city of Washington.

It appears that plaintiff was driving a team attached to a wagon at a rapid gait down a hill or steep grade on the street in question when one of the wheels caught in the railway tracks of defendant railway company, causing the wagon to stop with a sudden jerk, which threw plaintiff from the wagon to the street, causing the alleged injury.   In constructing the railway tracks in question, there were inserted between the rails headers (designated in the declaration as "tie-rods") used on heavy grades to prevent the surface clay and gravel from washing out from between the tracks.   These headers are situated about 50 feet apart, and consist of pieces of track rail lighter in weight than the rails used in the tracks.   They extend across the track at right angles to the rails, and are fastened to the tops of the ties.   The ends of the header terminate about 3 or 3½ inches from the rails, leaving sufficient space for the flanges of the car wheels to pass between the rails and the ends of the header. The top of the header is about ½ inch below the level of the top of the rails, and is entirely beneath the surface of the street, except at the ends, where spaces are maintained for the free operation of the car wheels.   It was in one of these spaces between one end of the header and the track rail that plaintiff's wheel caught, causing the accident.

After alleging the duty imposed upon the District to main-
tain its streets in safe condition, and the like duty of the rail-
way company with respect to the construction and maintenance
of its tracks, plaintiff specifically charges negligence, in that
"while lawfully driving a certain wagon along, on, and over
said Nichols avenue through no fault, negligence, or want of
due care on his part, (he) was violently precipitated and thrown
out of and from the said wagon by reason of one of the front
wheels of said wagon getting, becoming, and being caught,
locked, and fastened between a certain large piece of iron, to
wit, a tie-rod, and one of the rails of said track, negligently,
defectively, and improperly placed, maintained, and suffered
and permitted by the said defendants, and each of them, their
agents, servants, and employees, to remain for a long time, to
wit, one year, between said tracks of the defendant the Wash-
ington Railway & Electric Company, laid in said Nichols ave-
nue, in said District, as aforesaid, which said piece of iron so
negligently, defectively, and improperly placed, maintained,
and suffered and permitted to remain between said tracks, as
aforesaid, then and there constituted a dangerous obstruction
and defect in said street, and rendered said street dangerous
and unsafe."

*Mr. Robert L. Williams,* Assistant Corporation Counsel for
the District of Columbia, and *Mr. John S. Barbour* and *Mr.
Roger J. Whiteford,* for the appellants, in their brief cited:

*Abbott* v. *Rwy. Co.* 83 Mo. 278; *Alcott* v. *Pub. Serv. Corp.*
77 N. J. L. 110; *Arick* v. *Fry,* 8 App. D. C. 131; *Asphalt* v.
*Mackey,* 15 App. D. C. 410; *Bannagan* v. *District of Columbia,*
2 Mackey, 285; *B. & O. R. Co.* v. *Miller,* 37 App. D. C. 218;
*Bobbink* v. *R. Co.* 75 N. J. L. 913; *Bee* v. *Sultan Co.* 47 Wash.
57; *Bloomington* v. *Goodrich,* 88 Ill. 558; *Chapman* v. *Capital
Traction Co.* 37 App. D. C. 479; *Cane* v. *Joliet,* 103 Ill. App.
195; *Chitty* v. *R. Co.* 148 Mo. 64; *Chicago* v. *Scholten,* 75 Ill.
468; *Campbell* v. *R. Co.* 139 Pa. 522; *Dundas* v. *Lansing,* 75
Mich. 499; *District of Columbia* v. *Donaldson,* 38 App. D. C.
259; *District of Columbia* v. *Pierce,* 44 App. D. C. 126; *Dis-*

*trict of Columbia* v. *Gray,* 1 App. D. C. 500; *Harbison* v. *District of Columbia,* 9 App. D. C. 60; *Haynes* v. *Trenton,* 108 Mo. 123; *Hagen* v. *Schleuter,* 236 U. S. 467; *Hetzel* v. *R. Co.* 7 App. D. C. 524; *Hoyt* v. *Danbury,* 69 Conn. 341; *Hesselback* v. *St. Louis,* 179 Mo. 505; *Hayden* v. *R. Co.* 76 Conn. 356; *Johnson* v. *District of Columbia,* 118 U. S. 19; *Joyce* v. *R. Co.* 21 N. S. 531; *Smith* v. *St. Joseph,* 42 Mo. App. 392; *Kaiser* v. *R. Co.* 131 Mich. 506; *Kight* v. *R. Co.* 21 D. C. App. 510; *M'Killop* v. *R. Co.* 53 Minn. 532; *Miller* v. *R. Co.* 186 Pa. 190; *Morey* v. *St. Louis Co.* 116 Mo. App. 12; *Redford* v. *Coggeshall,* 19 R. I. 313; *Roberts* v. *Tel. Co.* 46 N. W. 800; *Sibert* v. *R. Co.* 188 Mo. 672; Thomp. Neg. 2d ed. sec. 1364; *Young* v. *Yarmouth,* 9 Gray, 386.

*Mr. R. C. L. Moncure, Mr. A. Leftwich Sinclair,* and *Mr. Joseph T. Sherier,* for the appellee:

Evidence of the general defective condition of the place described in the declaration is competent where the declaration charged that Nichols avenue between certain streets was defective and dangerous because of the presence of the space between the breakers and rails. *District of Columbia* v. *Burke,* 45 W. L. R. 166. See also *Campbell* v. *Kalamazoo,* 80 Mich. 655, 660; *Armstrong* v. *Ackley,* 71 Iowa, 80.

Evidence of this character is admissible for the purpose of showing not only that the defendants had notice of the condition complained of, but that it was in fact a dangerous place. *District of Columbia* v. *Armes,* 107 U. S. 519.

It is not reversible error to allow testimony of facts admitted by the complaining party. *Smith* v. *Seattle,* 33 Wash. 481.

This was not a public enterprise enuring to the benefit of the people generally. If the District had the power to prevent the placing of this dangerous device in the public street and failed to exercise that power, would it not be liable to anyone suffering injury therefrom? Can there be any doubt as to its power to prevent the installation of the device in question? *District of Columbia* v. *Sullivan,* 11 App.

D. C. 533; *Barnes* v. *District of Columbia,* 91 U. S. 540; *Finney* v. *District of Columbia,* 47 App. D. C. 48.

As to the liability of the railroad company, it would seem clear that they cannot excuse their negligence by implicating the District. *Osgood* v. *Lynn R. R. Co.* 130 Mass. 492; *Houston R. Co.* v. *Richart,* — Tex. —, 27 S. W. 918; 36 Cyc. 1502, and cases cited; *Houston R. Co.* v. *Delesdernier,* 84 Tex. 82; *Railroad Co.* v. *Dietz,* 50 Ill. 210; *Brown* v. *Metropolitan R. Co.* 60 App. Div. 184, affirmed in 171 N. Y. 699; *Delzell* v. *Ind. & C. R. Co.* 32 Ind. 45; *Montgomery Ry. Co.* v. *Smith,* 146 Ala. 316, 328, 3 Dill. Mun. Corp. 5th ed. p. 2082; *Griveaud* v. *St. L. R. Co.* 33 Mo. App. 458.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The chief error assigned consists in the refusal of the court, at the conclusion of the taking of the testimony, to grant the request of defendants for an instructed verdict, "on the ground that the condition complained of in the declaration was part of a plan or design adopted by the railroad company with the approval of the District of Columbia; and that the municipality was not liable for injury due to inadequacy of a plan or device." Exception was reserved by each of the defendants.

By reference to the acts of Congress affecting the construction of the street railway in question, we find in sec. 2 of the Act of February 18, 1875 (18 Stat. at L. 328, chap. 82), which is the charter of the Anacostia & Potomac River Railroad, the branch of defendant's line upon which this accident happened, it is provided "that in the manner of laying its tracks, and paving the same, this company shall be under the control of the executive authority of the District of Columbia; and it shall pave its tracks, and the spaces between them, and for the space of 2 feet beyond the outer line thereof, and keep the same in good order, without expense to the United States or the District of Columbia; and that said pavement shall be as prescribed by the said executive authority of the District of Columbia."

The Act of Congress approved March 3, 1905 (33 Stat. at L. 931, chap. 1412), extending the Anacostia line of Nichols ave-

tne, provides in sec. 3 "that all plans of location and construction shall be subjected to the approval of the commissioners of the District of Columbia;" and in sec. 5, "that the said railway and its appurtenances shall be constructed in a substantial and durable manner, subject to inspection by the commissioners of the District of Columbia;" and in sec. 7, "that the company shall keep the space between its rails and tracks and 2 feet exterior thereto in good condition, to the satisfaction of the commissioners of the District of Columbia."

, We think, in the light of the allegations of negligence and of the testimony, the defendant railway company must be relieved from liability. It was required to construct its track under the supervision of the executive authority of the District of Columbia. The engineer of the railway company who had charge of the construction of the railway testified "that the construction work was done in the fall and winter of 1911, with the permission and under the supervision of the District of Columbia; that the District of Columbia was represented by an assistant engineer during this period of construction; that in the construction of the tracks there were inserted between the rails what are known as breakers or headers, which are placed on heavy grades to prevent the washing of the surface matter or gravel from the track. That they were placed about 50 feet apart; that they were made of a lighter section than the track rail; that they were placed crosswise in the tracks, embedded in the ground, laid on top and fastened to the railroad ties at right angles to the rails; that these headers were almost the width of the track, but not the entire width, because it was necessary to leave room for the wheels of the cars to pass along the track; that the space varied approximately from 3 to 3½ inches;   *   *   *   that this plan of construction at the end of the header, between the rail and the end of the header, did not contemplate the filling in of the space by sand or dirt; that there was enough space for the wheel to freely operate upon the track; that the flange on the inner side of the wheel comes on the inside of the rail; that the space between the end of the header and the rail was obvious to a person using the track."

The assistant engineer of the District testified that he "had

been assistant engineer acting as assistant superintendent of suburban roads for about five or six years; that he had charge of the roads in the District outside of the city limits in connection with the maintenance of the surface and the drainage conditions." After describing the construction on Nichols avenue and his familiarity with the conditions there, he stated "that the designing was usually left to the railroad company; that when a plan of railroad construction was proposed, his work on behalf of the District of Columbia came into play in determining the desirability of that plan to accomplish the purpose for which it was designed; that he had a professional knowledge of the propriety, desirability, efficiency, and effectiveness of the device at the point in question on Nichols avenue; * * * that the device which was installed between the tracks of the Washington Railway & Electric Company at that time, for the purpose of preventing the washing of the surface, was good engineering." It is true that this witness, expressing his opinion as to the size of the space left between the end of the header and the rail, said: "I would not like it as well as I would the narrower space, because it gives a larger wheel a chance to get in there, and it will wash out quicker. As a rule, that space is filled with stones all the while, and the flange of the wheel makes its own impression there as to the width of it." He also stated that he would regard it as good engineering to keep these spaces filled.

But whether the spaces in some instances were kept open or were allowed to become filled is unimportant, since it appears that the open space was the approved plan, and the style of construction adopted and approved, and that was the exact condition of the space when the accident occurred. It further does not appear that the assistant engineer of the District here testifying was the one who supervised the construction of the railway. There is no evidence that the District, subsequent to the construction of the tracks, notified the railway company to change the plan originally adopted and to thereafter keep the spaces filled. It clearly appears that the cause of the accident, as laid in the declaration and proved, was due to a condition in the tracks growing out of the plan of construction originally

adopted by the railway company and supervised and approved by the District.

The nonliability of the railway company does not consist in the fact that the tracks may have been laid in accordance with a general plan submitted by it to conform to conditions similar to those existing on Nichols avenue, but in the fact that the plan there decided upon was used with the approval of the District. The courts are practically unanimous in holding that when a railway company constructs its railroad as directed by the municipal authorities when acting within the powers conferred upon them, no negligence can be imputed to it. Thomp. Neg. 2d ed. sec. 1364; *Campbell* v. *Frankford & S. C. R. Co.* 139 Pa. 522, 21 Atl. 92; *Seibert* v. *Missouri P. R. Co.* 188 Mo. 657, 70 L.R.A. 72, 87 S. W. 995; *Morie* v. *St. Louis Transit Co.* 116 Mo. App. 12, 91 S. W. 962.

It must, however, be clearly understood that we by no means commit ourselves to a rule that a street railway company may place an obstruction in the street notoriously dangerous, with knowledge of the existence of comparatively safe appliances which it could have originally installed or substituted for the dangerous device, and then take refuge behind municipal approval. But, as here, where no attempt has been made to show a safer plan of construction in common or known use, and nothing more is shown than that on one or two previous occasions wheels had caught in the spaces in question, a common occurrence in driving vehicles over and about railway tracks, we think it would be equivalent to totally ignoring the general rule of nonliability in this class of cases to hold that, under the declaration and the proof before us, a case has been made out against the railway company, which should have been submitted to the jury. The sharp distinction involved in the above exception should be clearly alleged and supported by proof to justify the submission of the question to the consideration of a jury.

In *Morie* v. *St. Louis Transit Co. supra,* where, as here, plaintiff was injured by being thrown from a vehicle, caused by a wheel catching in a switch plate, the distinction is clearly pointed out, as follows: "Railway tracks are a source of some

danger to such persons; for it is not uncommon for the wheels of a vehicle to be wrenched off in driving diagonally over tracks, and occasionally someone is thrown to the ground in that way and hurt. Such occurrences happen with comparative frequency in driving over the intersections of ordinary switches or of sidewalks with main lines. Freight wagons often get caught in street car tracks. Those instances must be borne with, for the sake of the public service rendered by the railways. As we have stated, the lawfulness of the obstruction depends on the necessity for maintaining it, its utility, and the degree of inconvenience and danger it entails. And this is recognized in the decisions on the subject, despite the broad propositions often declared. Of course, the need to maintain an appliance is to be considered. Its danger may be so great that no necessity will justify its use. Comparisons must be instituted. A given implement may be somewhat dangerous, but not too much so to be used, if there is nothing safer; when, if a safer one can be obtained, it would be remiss to use the other. But this latter consideration would come up only in a case for negligence in choosing an inferior appliance. The present case does not require us to commit this court to. any extreme doctrine regarding what structures in a street are permissible. Without doing so, we need not hesitate to declare that no evidence was adduced tending to show the switch in question was either unnecessary, or obstructed or endangered travel to an extent which rendered its presence in the street a nuisance, as alleged, and thereby made defendant answerable, as a tort-feasor, to plaintiff."

We come now to the more difficult question of the liability of the District of Columbia. We are here called upon to distinguish between those powers of municipal corporations which are discretionary or judicial in character and those powers which are purely ministerial. We are not concerned in this case with those powers of municipal corporations which embrace governmental duties delegated to the municipality by the legislature, and in which the municipality acts as the agent of the State. In selecting and adopting a general plan of public improvement, such, for example, as a sewer system, the municipal corporation exercises judicial discretion, but in carrying out the plan it

acts ministerially, and must perform the work in a reasonably safe and skilful manner. Acting in good faith, it, therefore, would not be liable for an error of judgment in constructing such a system.

This distinction finds expression in the case of *Johnston* v. *District of Columbia,* 118 U. S. 19, 30 L. ed. 75, 6 Sup. Ct. Rep. 923, as follows: "The duties of municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and of what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land. But the construction and repair of sewers, according to the general plan so adopted, are simply ministerial duties; and for any negligence in so constructing a sewer, or keeping it in repair, the municipality which has constructed and owns the sewer may be sued by a person whose property is thereby injured."

The plan here was formulated and adopted by the railway company, and it was approved, and the construction supervised and directed, by the District, acting, under the direction of Congress, through its assistant engineer. The duty was not imposed upon the District of formally preparing and adopting any general plan, but of approving and supervising the construction under the plan prepared and presented by the railway company. But the relation of the District to the present controversy is the same, whether the tracks were constructed by the railway company upon a general plan furnished by the District, or upon its own plan approved and supervised by the District. *Hayden* v. *Fair Haven & W. R. Co.* 76 Conn. 355, 56 Atl. 613; *McKillop* v. *Duluth Street R. Co.* 53 Minn. 532, 55 N. W. 739; *Miller* v. *Lebanon & A. Street R. Co.* 186 Pa. 190, 40 Atl. 413. In the *McKillop Case,* the court announced the general rule in cases involving municipal supervision as follows: "A municipal

corporation has, through its council, control and ·charge of the
streets, and may regulate the làying of street railway tracks
upon them; and if the council directs the railway company to
lay the tracks upon a specified level or grade, and so laying
them makes the street unsafe for ordinary travel, the municipal
corporation would doubtless be liable for injuries resulting
therefrom. But it could hardly be said that so laying them
would be an act of negligence on the part of the railway com-
pany."

We think the liability of the District here must be treated as
arising primarily from the paramount duty imposed upon it of
maintaining the streets in reasonably safe condition. The
liability of the District in damages for accidents due to failure
tò maintain the streets in reasonably safe condition is settled.
In *District of Columbia* v. *Sullivan,* 11 App. D. C. 533, 541,
the court said: "And it is held by express and repeated deci-
sions of the Supreme Court of the United States, that the
municipal corporation of this District is liable for injuries to
persons arising from the negligence of its officers and agents
in constructing and maintaining in safe condition, for the use
of the public, the streets, avenues, alleys, public roads, and
bridges, and all public sidewalks of the city of Washington and
of the District of Columbia. *Barnes* v. *District of Columbia,*
91 U. S. 540, 23 L. ed. 440; *District of Columbia* v. *Woodbury,*
136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990."

But, adopting the reasoning of the District, as we must, that
the approval of the plan presented by the railway company was
equivalent to its ad ption by the District, to what conclusion
does it logically lead? Having adopted a plan and created an
existing condition on the street in pursuance thereof, if it sub-
sequently appears that the condition thus created renders the
street unsafe, the District must go further and perform the
duty cast upon it, growing out of its general supervision of the
streets, to exercise ordinary care and take the necessary addi-
tional steps to make the street, thus encumbered with the prod-
uct of its plan, reasonably safe for travel. *Loewer* v. *Sedalia,*
77 Mo. 431; *Chicago* v. *Gallagher,* 44 Ill. 295.

We think the duty imposed upon the District to keep ,the

streets in reasonably safe condition is controlling, whether a dangerous condition is the result of a general plan of improvement, or not. The action is not for negligence because of a defective plan, but for maintaining the streets in an unsafe condition. For example, a general plan for a sewer system may be adopted; but, in its construction, let us assume that the tops of the manholes in the street are sunk a foot below the surface of the pavement, creating a hole or depression, and as a result thereof a person sustains injury. The action would not be based upon a defective plan, or, technically speaking, upon the defective construction of the sewer, but upon the negligence of the municipal authorities in permitting a dangerous condition to exist in the street, as the result of defective construction. So, here, the question is whether the plan of construction followed, which wholly affected the condition of the surface of the street, coincided with the plan approved, and tended to make the street reasonably safe for travel. If so, the plan must be held to be a reasonable one, and the city would not be liable for injury occurring as a result of its adoption and installation. But if it left the street in a dangerous and unsafe condition, it could not be held to be a reasonable plan, when measured in the light of the paramount duty imposed of keeping the streets at all times in a reasonably safe condition.

Considering a similar situation in the case of *Finney* v. *District of Columbia,* 47 App. D. C. 48, where the plaintiff was suing for injuries sustained from stepping into a tree space in the sidewalk, the court said: "If it [the condition complained of] was dangerous it could not be held to conform to any reasonable plan of construction, irrespective of the condition of spaces in other parts of the city. If constructed according to plan, or otherwise, the District could not avoid liability if it was allowed to become dangerous. If the plan adopted was a reasonable one, and the space in question conformed to that plan, the District would not be liable; but if the plan was not reasonable, or through neglect the space had become dangerous, then the duty of the District would be the same as that imposed upon it with respect to any condition of the street or sidewalk which is permitted to become a menace to the safety of persons traveling

thereon.   A municipal corporation is liable for personal injuries
caused by defects in a lawful obstruction in a street caused by
want of proper supervision.   *District of Columbia* v. *Duryee,*
29 App. D. C. 327, 10 Ann. Cas. 675."

The whole question of the liability of the District was one
for the jury.   While the real question here involved was to some
extent touched upon in the instructions of the court below, the
instructions were given, and the case tried, upon the theory of
the joint liability of the railway company and the District, and
we think was not so clearly presented upon the question of the
separate liability of the District as to obviate possible confusion
in the minds of the jury.   We think, for this reason, that there
should be a new trial.

The judgment is reversed, with costs, and the cause remanded
for a new trial.                          *Reversed and remanded.*


Mr. Chief Justice Smyth dissenting:


I cannot give my assent to the conclusion reached by the
majority with respect to the liability of the street railway com-
pany.   If the District had directed the company to lay its
track in the manner in which the track in question was laid,
then, in my opinion, the company would not be liable.   But
there is no evidence here that any direction or command which
the company was bound to obey was given with respect to the
subject.   The company prepared its plan and submitted it to
the district engineer, who, according to the company's engineer,
approved it, and afterwards supervised the construction of the
track.   There is no proof that the city directed the construction
of the track in the manner complained of.   Here, in my opinion,
lies the distinction between this case and those referred to in
the majority opinion.   The mere *permission* to construct the
track in a certain way is one thing, while a *direction* to con-
struct it in that way is quite another.   In the former case no
reason appears why the city approving the plan should be held
for damages resulting from defects in it, while the railway cor-
poration which originated and executed the plan for its own
benefit, should be saved from all responsibility.

The majority opinion cites Thomp. Neg. 2d ed. sec. 1364; *Campbell* v. *Frankford & S. C. R. Co.* 139 Pa. 522, 21 Atl. 92; *Seibert* v. *Missouri P. R. Co.* 188 Mo. 657, 70 L.R.A. 72, 87 S. W. 995, and *Morie* v. *St. Louis Transit Co.* 116 Mo. App. 12, 91 S. W. 962, in support of its views upon this point. Thompson says a street railway company is relieved from responsibility where it constructs and maintains its track "in accordance with the mode *prescribed* by the municipal corporation." (Italics mine.) In the *Campbell Case* there was no evidence that the depression complained of was built by the railway company, and therefore it was presumed to be the product of the city. In the *Seibert Case* it appears that the defective structure was erected in pursuance of an ordinance of the city and in compliance with its *directions*. In the *Morie Case* it was held that, where a switch was constructed in a street in harmony with a license from the city, it was presumptively safe, and the burden was on anyone who was injured to prove that it was "a nuisance and unlawful despite the fact that it was licensed." It will be observed that none of these go so far as the majority opinion in denying the street railway company's liability.

On the other hand, in *Osgood* v. *Lynn & B. R. Co.* 130 Mass. 492, 493, the supreme judicial court of Massachusetts made the distinction for which I am contending. The lower court was asked, but refused, to charge that "if the tracks of the defendant corporation were constructed in conformity with the requirements of the municipal authorities and to the satisfaction of the superintendent of streets, the defendant would not be liable for any injury resulting from the mode in which the tracks were laid." Instead, it instructed the jury that if the street railway track complained of was defective the company would be liable even though it was "constructed to the satisfaction of the superintendent of streets," and then added: "But that, if the municipal authorities *required* the tracks to be constructed in the manner claimed to constitute the defect, the defendant is not liable in this action." These rulings were sustained as a correct expression of the law.

*Brown* v. *Metropolitan Street R. Co.* 60 App. Div. 184, 70

N. Y. Supp. 40, affirmed in 171 N. Y. 699, 64 N. E. 1119, is not unlike the case at bar in its facts. It was there claimed that a cable slot in a street was too wide, and because of this the bicycle on which plaintiff was riding dropped in, and he was injured. The court held that, if "the opening was made in such a way as to create a nuisance, the defendant is [was] not protected by the grant of authority to interfere with the highway." The supreme court of Alabama in *Montgomery Street R. Co.* v. *Smith,* 146 Ala. 316, 39 So. 757, 762, said: "The fact that the city engineer might have been looking after the work did not release the defendant from the duty resting upon it to keep that part of the street in safe condition." Other decisions bearing upon the same question are: *Houston City Street R. Co.* v. *Delesdernier,* 84 Tex. 82, 19 S. W. 366; *Alton & U. A. Horse R. Co.* v. *Deitz,* 50 Ill. 210, 99 Am. Dec. 509; *Delzell* v. *Indianapolis & C. R. Co.* 32 Ind. 45.

The street railway company, in my judgment, is liable, and the case should be affirmed both as to it and the District.

A motion for a rehearing was denied August 12, 1918.