**Irene D. TREADWELL, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 13773.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 22, 1957.

Decided April 17, 1958.

Mr Charles B. Sullivan, Jr., Washington, D. C., for appellant.

Mr. Hubert B. Pair, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, Richard W. Barton and Andrew G. Conlyn, Asst. Corp. Counsel, were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

PER CURIAM.

Appellant, having alighted from a taxicab which then drew away, slipped as she stepped from the curb into the brick-lined gutter of First Street, N. W.

As she thereupon fell, she received injuries allegedly due to the negligence of the District of Columbia. She now complains that the trial judge erred in directing a defendant's verdict at the close of the plaintiff's case. He ruled that the plaintiff's notice of her claim was inadequate as failing to comply with the requirements of D.C.Code § 12–208 (1951), but we decide otherwise in view of Stone v. District of Columbia, 1956, 99 U.S.App.D.C. 32, 237 F.2d 28, (en banc) certiorari denied 1956, 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160.

It was also concluded that the plaintiff had failed to supply "any proof of the alleged negligence." On this point we agree and will affirm.

The complaint had alleged that the District is charged by law with the maintenance of sidewalks, but the plaintiff was not on a sidewalk or crosswalk. It was also alleged that the District had negligently maintained the "guttering" and had created a dangerous condition, and that the plaintiff "was about to step onto the curb when as a result of the improper construction and/or maintenance of the curbing" she fell into a storm sewer.

The exhibits disclose an aperture, flush with the curbing, located some ten or twelve feet north of the crosswalk. The gutter is lined with inlaid bricks which are pitched at the mouth of the drain to divert water into a sump. The plaintiff and her sister, to like effect, described the brick surface in front of the inset opening to the drain as "slick," "not flat," "slanted," "straight down." There was no foreign matter on the dry surface. The sun was shining. It was a bright summer afternoon. The plaintiff, wearing "heels," was intent upon reaching a funeral parlor on the opposite side of the street. Having first stepped from the cab directly onto the curb, when the cab drew away, she started. As she said, "I just stepped off the curb and I just slipped on under." She went back afterwards to look at the area.

■■ We have carefully studied the transcript and the exhibits. There was offered no evidence of negligent construction or engineering defect or of faulty maintenance. Certainly there was no negligence as a matter of law, and it was the plaintiff's burden to establish that the District had somehow failed to perform a duty owed to her. There was a "total lack of evidence showing negligence on the part of the District, sufficient to support a judgment in this case." District of Columbia v. Manning, 1927, 57 App.D.C. 156, 157, 18 F.2d 806, 807, 53 A.L.R. 167. We see only an unfortunate mishap wherein the plaintiff stepped off the curb into the gutter and fell while doing so.

There is no error.

Affirmed.

WASHINGTON, Circuit Judge (dissenting).

Plaintiff's evidence showed that she stepped from the curb on to a brick gutter surface which was "glazed," "slick" and "slanted." She slipped down this slanted surface into a storm sewer opening under the adjacent curb. She went down the opening up to her armpits. Plaintiff is a married woman, and from the testimony is evidently a full-grown adult. The injuries suffered were serious. The danger to the public—and particularly to children—in permitting such a condition to exist would seem obvious.

The District of Columbia has the duty, as we said in Booth v. District of Columbia, 1956, 100 U.S.App.D.C. 32, 34, 241 F.2d 437, 439: " 'to keep the streets in reasonably safe condition * * * whether a dangerous condition is the result of a general plan of improvement, or not. *The action is not for negligence because of a defective plan, but for maintaining the streets in an unsafe condition.*' (Emphasis supplied.)," quoting from District of Columbia v. Caton, 1918, 48 App.D.C. 96, at page 107. In Caton,

supra, the court illustrated this distinction as follows:

"For example, a general plan for a sewer system may be adopted; but, in its construction, let us assume that the tops of the manholes in the street are sunk a foot below the surface of the pavement, creating a hole or depression, and as a result thereof a person sustains injury. The action would not be based upon a defective plan, or, technically speaking, upon the defective construction of the sewer, but upon the negligence of the municipal authorities in permitting a dangerous condition to exist in the street, as the result of defective construction. So, here, the question is whether the plan of construction followed, which wholly affected the condition of the surface of the street, coincided with the plan approved, and tended to make the street reasonably safe for travel. If so, the plan must be held to be a reasonable one, and the city would not be liable for injury occurring as a result of its adoption and installation. But if it left the street in a dangerous and unsafe condition, it could not be held to be a reasonable plan, when measured in the light of the paramount duty imposed, of keeping the streets at all times in a reasonably safe condition."

Plaintiff introduced photographs from which a jury might find (1) that there was a steep incline or slope on the facing bricks of the catch basin, and (2) that the catch basin was within the area normally used as a crosswalk.[1] Plaintiff's testimony, corroborated by that of her companion, was that, although there was no foreign matter on the surface of the brick facing of the catch basin, the surface of the bricks was "glazed," "slick," and "straight steep down." The photographs do not accord with the "straight steep down" description, but they do show a not insignificant variation from the flat surface of the street. This showing, under the rationale of Caton, supra, should be sufficient to put the District to its proof. See Cellini v. Moss, 1956, 98 U.S.App.D.C. 114, 232 F.2d 371. Plaintiff introduced at least as much evidence as seems contemplated by the example quoted above from Caton.

In addition, the condition here—a depression in a crosswalk—is analogous to an unevenness or irregularity in the surface of a sidewalk. In the sidewalk cases, courts at first set up standards of unevenness in terms of inches: e.g., a bump less than one and one-half inches high was, as a matter of law, not sufficient to impose liability on the city. In New York, formerly, a depression had to be at least four inches to be actionable. But the recent trend and the better reasoned cases have abandoned such an arbitrary approach. Now the question of negligence does not depend upon the application of a mathematical rule, but each case is to be determined by the jury, at least where fairminded men might differ. See District of Columbia v. Williams, D.C.Mun.App.1946, 46 A.2d 111; Parker v. City and County of Denver, 1953, 128 Colo. 355, 262 P.2d 553, 37 A.L.R.2d 1177, and Annotation, 1954, 37 A.L.R.2d 1187.

I think the plaintiff here introduced sufficient evidence fairly to raise the question for the jury whether the condition of the catch basin, under all the circumstances, created an unreasonable risk of harm to this plaintiff. It was error, in my view, for the District Court to direct a verdict for the District at the close of the plaintiff's evidence.

1. Neither here nor in the District Court did the District contend that the point at which appellant fell was outside of the normal crosswalk area. There were no painted white lines at this intersection to indicate a crosswalk.