## LOUBE v. DISTRICT OF COLUMBIA.

### No. 6830.

United States Court of Appeals for the District of Columbia.

Decided June 28, 1937.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellant.

Elwood H. Seal, Vernon E. West, and Chester H. Gray, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the District Court of the United States for the District of Columbia for defendant (appellee) entered upon an order sustaining defendant's demurrer to the declaration, in which plaintiff claimed damages for personal injuries alleged to have been sustained by reason of a collision on December 31, 1935, by defendant's garbage truck with a street car in which plaintiff was a passenger, the single ground of the demurrer being that "the collection of garbage is a governmental function, and the District of Columbia is not liable for torts committed in the performance thereof."

In Brush v. Com'r of Internal Revenue, 300 U.S. 352, 57 S.Ct. 495, 496, 81 L.Ed. 691, 108 A.L.R. 1428, decided March 15, 1937, the court observed: "There probably is no topic of the law in respect of which the decisions of the state courts are in greater conflict and confusion than that which deals with the differentiation between the governmental and corporate powers of municipal corporations." The Brush Case involved the question whether the salary of the Chief Engineer of the Bureau of Water

Supply of the City of New York is a part of his taxable income for the purposes of the federal income tax law. "The answer depends," said the court, "upon whether the water system of the city was created and is conducted in the exercise of the city's governmental functions. If so, its operations are immune from federal taxation and, as a necessary corollary, 'fixed salaries and compensation paid to its officers and employees in their capacity as such are likewise immune.'"

After a review of previous cases in that court, the opinion continued: "We conclude that the acquisition and distribution of a supply of water for the needs of the modern city involve the exercise of essential governmental functions, and this conclusion is fortified by a consideration of the public uses to which the water is put. Without such a supply, public schools, public sewers so necessary to preserve health, fire departments, street sprinkling and cleaning, public buildings, parks, playgrounds, and public baths, could not exist. * * * Certainly, the maintenance of public schools, a fire department, a system of sewers, parks, and public buildings, to say nothing of other public facilities and uses, calls for the exercise of governmental functions." After observing that private corporations might be able and willing to undertake to provide a supply of water for all purposes, the court said: "But if the state and city of New York be of opinion, as they evidently are, that the service should not be intrusted to private hands, but should be rendered by the city itself as an appropriate means of discharging its duty to protect the health, safety, and lives of its inhabitants, we do not doubt that it may do so in the exercise of its essential governmental functions."

Answering the contention that the municipality in supplying water for its inhabitants is engaged in selling water for profit, the court said: "What the city is engaged in doing in that respect is rather rendering a service than selling a commodity. If that service be. governmental, it does not become private because a charge is made for it, or a profit realized."

See, also, New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L. Ed. 306, decided January 4, 1937.

In Harris v. District of Columbia, 256 U.S. 650, 41 S.Ct. 610, 65 L.Ed. 1146, 14 A.L.R. 1471, it was held that the work of cleaning the streets for the protection of the public health and comfort appertains to the discretionary governmental functions of the District of Columbia, distinguished from the special corporate or municipal duty of keeping the streets in repair, and that the District is not liable for personal injuries occasioned by the negligence of its employees while engaged in sprinkling streets preparatory to cleaning them. The court said: "But, nothing else appearing, we are of opinion that, when sweeping the streets, a municipality is exercising its discretionary powers to protect public health and comfort and is not performing a special corporate or municipal duty to keep them in repair. This conclusion, we think, accords with common observation, harmonizes with what has been declared heretofore concerning liability of the District of Columbia for torts, and is supported by well-considered cases."

In Tillman v. District of Columbia, 58 App.D.C. 242, 29 F.(2d) 442, the District of Columbia had installed, maintained, and controlled a water sprinkler or shower in one of its public streets in the city of Washington for the comfort and pleasure of the children of the community. In so doing, the court ruled, the District was discharging a governmental function and was not liable for negligence in maintaining the sprinkler in the street for the comfort and pleasure of children.

In District of Columbia v. May, 63 App. D.C. 10, 68 F.(2d) 755, 756, we held that because engaged in the exercise of a governmental function the municipality was not liable for damages resulting from a collision occurring while its employee was returning to a storehouse to get equipment for use in installing a fire control box, the employee's negligence being admitted. We said that the negligence "was that of a servant of the municipality employed at the time solely in the erection of a fire box installed in the public interest for the more efficient .control of fires. This is not the performance of a municipal duty, that is to say, a mandatory thing or a thing done in the interest of the city in its corporate capacity, but is rather the doing of an act in its nature discretionary, that is to say, an act of grace—a nonobligatory act; and is in all respects like measures taken in the preservation of the public health."

The District of Columbia Appropriation Act for the fiscal year ending June 30, 1936 (Act of June 14, 1935, c. 241, 49 Stat.

341, 351) contained the following provision: "To enable the Commissioners to carry out the provisions of existing law governing the collection and disposal of garbage, dead animals, night soil, and miscellaneous refuse and ashes in the District of Columbia, * * * $795,000: Provided, That any proceeds received from the disposal of city refuse or garbage shall be paid into the Treasury of the United States to the credit of the United States and the District of Columbia in the manner provided by law: Provided further, That this appropriation shall not be available for collecting ashes or miscellaneous refuse from hotels and places of business or from apartment houses of four or more apartments in which the landlord furnishes heat to tenants."

Because proceeds may be received from the disposal of garbage, its collection may be none the less governmental. "If that service be governmental, it does not become private because a charge is made for it, or a profit realized." Brush v. Com'r of Internal Revenue, 300 U.S. 352, 57. S.Ct. 495, 501, 81 L.Ed. 691, 108 A.L.R. 1428; Bolster v. Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A.1917B, 1285.

The maintenance of public schools, fire departments, systems of sewers, parks, and public buildings, it has been definitely determined, calls for the exercise of a governmental function. Certainly the protection of the city from accumulations of garbage involves the exercise of a governmental function to almost as great an extent as the maintenance of a system of "public sewers so necessary to preserve health." "The accumulation of garbage, of substances offensive to the sense of smell, of substances which, if permitted to remain, would poison the atmosphere, and breed diseases infectious and contagious among the inhabitants of the city, may well be said to endanger the public health. The preservation of the public health involves the removal of those causes which are calculated to produce disease." Love v. City of Atlanta, 95 Ga. 129, 134, 22 S.E. 29, 30, 51 Am.St.Rep. 64. See, also, Bolster v. Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A. 1917B, 1285.

As above indicated, we rule that the collection of garbage involves the exercise of a governmental function, and this ruling is in harmony with the Harris, Brush, and Rogers Cases.

Judgment affirmed.

Affirmed.