## WILSON et ux. v. DISTRICT OF COLUMBIA.

### No. 9909.

United States Court of Appeals.
District of Columbia Circuit.

Argued April 13, 1949.

Decided Dec. 19, 1949.

Mr. Earl H. Davis, Washington, D. C., with whom Mr. Harry James Harth, Washington, D. C., was on the brief, for appellants.

Mr. Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., with whom Mr. Vernon E. West, Corporation Counsel, and Messrs. Edward A. Beard and William Staley Cheatham, Assistant Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before CLARK and PROCTOR, Circuit Judges, and LEDERLE, District Judge, sitting by designation.

LEDERLE, District Judge.

This is an appeal from an order granting a motion for summary judgment of dismissal in favor of defendant-appellee, the District of Columbia, a municipal corporation created by Act of Congress, D.C.Code 1940, § 1—101 et seq. The appellants, husband and wife, filed a complaint claiming damages resulting from personal injuries received by appellant-wife as a result of a fall upon the terrazzo floor of a hallway within the Municipal Center Building, Washington, D. C., as the result of defend-

ant permitting water or other liquid or substance to remain on said floor to such an extent to cause the floor to become dangerous and unfit for the use of persons walking upon it, of which condition the defendant knew or, by the exercise of reasonable care, should have known. This allegation as to the defective condition complained of was amplified by plaintiffs' counsel upon argument of the motion for summary judgment to the effect that the wet condition of the floor was caused by drippings from raincoats, umbrellas and other apparel of persons entering the Municipal Center on a rainy day. The Municipal Center Building was owned by the District and was occupied as the District City Hall. The plaintiffs had entered said building for the purpose of visiting a branch of the Metropolitan Police Department located therein.

The facts were not in dispute. The motion, supported by affidavits, showed that the new Municipal Center was completed in 1941; that due to the existing National Emergency of World War II, the District of Columbia Commissioners had been informed previously that they were expected to cooperate with the War Program of the Federal Government, and just prior to the opening of the Municipal Center Building, the Commissioners were notified specifically that the Federal Public Buildings Administration desired a portion of the new building to temporarily house part of the War Department. On April 28, 1941, such an arrangement was consummated by written agreement providing that the District would operate and maintain the building, and the United States Government would transfer funds to the credit of the District in an amount sufficient to reimburse the District for costs of operation and maintenance in the proportion which the number of square feet of office space occupied by the War Department bore to the total number of square feet of office space in the building, plus some adjustments for costs of additional telephone facilities and temporary alterations of wall partitions occasioned by the War Department occupancy. This allocation of maintenance expenses was computed to be $.6215 per square foot per annum. By July 1, 1942, this computation

was found to be too low, and the figure of $1.00 per square foot was substituted. Such figure was approximately one-third of the rental paid on the open market for comparable space in Washington office buildings, and was approximately one-half of the rental paid by the Federal Public Buildings Administration for rental of office space in privately owned office buildings in the District. There was also located in the building a cafeteria, operated by a private corporation for the convenience of employees in the building, which was occupied rent-free. There was also a lunch stand located in a corridor alcove of the building, operated by the Washington Society for the Blind free of rent. The War Department occupied 70,197 square feet out of the total 278,332 square feet of the building. Such War Department occupancy was temporary during the War Emergency and has since ceased. The building is now solely occupied by District municipal departments and the said cafeteria and lunch stand. At the time plaintiff-wife received the injuries complained of, during May, 1946, in addition to the aforesaid temporary War Department occupancy, the following District governmental departments occupied the balance of the available office space in said building:
Alcoholic Beverage Control Board
Barber Board
Boxing Commission
City Refuse Division
Cosmetology Board
District of Columbia National Guard
Fire Department
Health Department
Department of Insurance
License Bureau
Mental Health Commission
Minimum Wage Board
Metropolitan Police Department
Parole Board
Board of Public Welfare
Special Finance Unit of the Office of the Tax Assessor
Superintendent of District Buildings
Department of Vehicles and Traffic
Department of Weights and Measures

 It is plaintiffs' position that, because at the time of the accident a portion

of the available space in this building had been temporarily occupied by the War Department under an arrangement whereby part of its appropriation was allocated to the District to defray a pro rata share of costs of maintenance, the District was engaging in a proprietary function, renting office space, rather than in a governmental function, which deprived the District temporarily of the governmental immunity which it would normally have against suits brought by residents of the District for injuries allegedly received in the building while such residents were participating in District governmental functions. It is conceded that the War Department was solely engaged in governmental functions in the space it occupied. No very strenuous contention is made that the operation of the cafeteria and lunch room rent-free changes the legal significance to any great extent. That such incidental use does not preclude application of the governmental immunity defense, see: Hartness v. Allegheny County, 349 Pa. 248, 37 A.2d 18.

In granting judgment for the defendant, the trial court very succinctly disposed of the issues in a memorandum reading:

"The rental by the District government of part of the Municipal Building on Indiana Avenue to certain agencies of the United States government on a non-profit basis, as is the case here, does not create a proprietary function. The maintenance of the building is a governmental function and the District of Columbia therefore is not liable.

"Nor can the condition of the lobby on the day the accident happened be held a nuisance. The floor was wet and slippery due to weather conditions."

■ The appellants' brief admits, in effect, that there is a great divergence of opinion among the courts of the various states as to just what activities engaged in by municipalities are held to be within or without the line of demarcation between governmental and proprietary functions. The District's main reliance is placed upon Loube v. District of Columbia, 1937, 67 App.D.C. 322, 92 F.2d 473, which reviews a number of cases prior thereto and reaches the conclusion that, if the municipality is engaged in rendering a service rather than selling a commodity, and if that service be governmental, it does not become proprietary because a charge is made for it. Applying that principle to the facts as shown by this record, in acceding to the United States Government's demands that a portion of this building should be allocated for temporary use of the Government's War Department during a War Emergency, under an arrangement whereby a part of an appropriation for housing the War Department was allocated to cover the War Department's pro rata share of building operating expenses, the District was rendering a public service in aid of the war effort and not stepping out of its role of performing governmental functions so as to be deemed to be engaging in the business of renting office space. The trial court properly held that during May, 1946, the District was engaged in a governmental function in operating this building.

■ Appellants also seek to avoid the impact of the general governmental immunity doctrine by contending that the condition of the floor at the time of the accident might be considered a nuisance. The trial court very aptly disposed of this argument by stating, "Nor can the condition of the lobby on the day the accident happened be held a nuisance. The floor was wet and slippery due to weather conditions." A good analysis of the legal philosophy relating to a municipality's liability for nuisance is contained in Pearson v. Kansas City, 1932, 331 Mo. 885, 55 S.W.2d 485, 488, 489.

■ The concluding paragraphs of appellants' brief, pointing out that the question of a municipal corporation's liability in tort is in a confused state of authority, and suggesting that this court change the law of this District to make it conform to the Congressional intent as to the general Federal Government's liability for torts free from the defense of governmental immunity, as expressed in the Federal Tort Claims Act of August 2, 1946, ch. 753, 60 Stat. 842, 28 U.S.C.A. §§ 1346, 2671 et seq. should be addressed to the legislature

rather than to this court. As stated by Professor Smith in "Municipal Tort Liability," 48 Mich.L.Rev. 41, 56, "Adequate reformation can be achieved only by legislation."

The judgment appealed from is affirmed.