**James R. SPENCER, Appellant,**

v.

**GENERAL HOSPITAL OF the DISTRICT OF COLUMBIA et al.,**
**Appellees.**

**No. 21493.**

United States Court of Appeals
District of Columbia Circuit.
On Rehearing En Banc.
Reargued May 27, 1969.
Decided Nov. 10, 1969.

Mr. King David, W,ashington, D. C., for appellant.

Mr. 'Richard W. Barton, Assistant Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and David P. Sutton, Asst. Corporation Counsel, were on the brief, for appellees.

Before BAZELON, Chief Judge, PRETTYMAN and DANAHER, Senior

Circuit Judges, WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON and ROBB, Circuit Judges, sitting *en banc*.

McGOWAN, Circuit Judge: *

Appellant's complaint in the District Court alleged that (1) he had, as a paying patient, been admitted to the District of Columbia General Hospital for diagnosis and treatment of a pain in his back, (2) the Hospital's employees had "negligently, or recklessly, or carelessly" treated him, including the improper performance of surgery, and (3) the injuries so suffered were compensable in damages. The Hospital, an agency of the District Government, moved to dismiss the complaint before trial as barred by the immunity to suit assertedly enjoyed by the District of Columbia as a governmental entity. In granting the motion for this reason, we think the District Court erred.

I

In support of the judgment appealed from, appellee insists that Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 337 F.2d 152 (1964), is inapposite because it involved improper maintenance of a public school playground, whereas the complaint in this case relates to the provision of medical services in a public hospital. In this latter area, appellee points to our decision in Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955), as controlling, and as necessitating affirmance of the District Court unless we are to characterize that case as without continuing authority. We think this last is a fair challenge, and we meet it directly.

*Calomeris* was, like the case now before us, a suit to recover for allegedly negligent medical treatment of a paying patient at D.C. General Hospital. Classifying the operation of the Hospital by the District Government as the perform-

* Chief Judge BAZELON, and Judges TAMM, LEVENTHAL, ROBINSON, and ROBB join in this opinion. Judge PRETTYMAN concurs in a separate opinion, in which Judge DANAHER joins. Judge WRIGHT concurs in a separate opinion, in which Chief Judge BAZELON also joins.

ance of a "governmental function," the *Calomeris* court concluded that immunity accordingly attached, and affirmed the District Court's pre-trial dismissal of the complaint. The District Court had taken this action "much to its regret" (125 F.Supp. 266, 268), and this court on appeal recorded its own unhappiness about the result in these terms (at p. 268 of 226 F.2d):

> We agree with Judge Holtzoff that the defense of governmental function to a complaint for negligence, mistreatment or malpractice is 'an obsolescent and dying doctrine', but we also agree with him that since it is a phase of government immunity Congress alone can replace it. We join in his suggestion that the attention of the Congress might well be directed to it. Congress did not include the District of Columbia Government in the Federal Tort Claims Act. * * *

In *Elgin*, we put to one side an issue tendered to us in terms of a plea that we abolish the doctrine of sovereign immunity in tort for the District Government. In doing so, we took note of various expressions by this court, in addition to *Calomeris*, to the effect that abolition was a matter for the Congress,[1] and we

thought it appropriate for the issue so cast to be pursued only *en banc*. We did not feel inhibited, however, from probing the emerging formulations of the municipal immunity principle and, in particular, we remarked the trend, in this jurisdiction as elsewhere, towards an analysis which looked to the nature of the function being performed by a municipality and which did not stop short at a finding of the governmental character of the activity in question. We found that the articulation of the immunity test in terms of "governmental," as opposed to "proprietary," functions had increasingly lost its vitality as an accurate or adequate rationale for the immunity privilege. We noted that this court had contributed to an evolving concept of municipal immunity in tort as deriving from a purpose not to jeopardize "the quality and efficiency of government itself" by exposing the exercise of discretion in the formulation of governmental policy to the scrutiny and sanction of tort liability.[2]

Under these circumstances the *Elgin* court did not think itself disabled by *stare decisis* from deciding in that case that the mere fact that a public school was involved did not foreclose further

---

1. Harbin v. District of Columbia, 114 U.S.App.D.C. 31, 336 F.2d 950 (1964); Urow v. District of Columbia, 114 U.S. App.D.C. 350, 316 F.2d 351, petition for rehearing *en banc* denied April 16, 1963, cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963); Capital Transit Co. v. District of Columbia, 96 U.S.App. D.C. 199, 225 F.2d 38 (1955); Wilson v. District of Columbia, 86 U.S.App.D.C. 28, 179 F.2d 44 (1949).

2. Booth v. District of Columbia, 100 U.S. App.D.C. 32, 241 F.2d 437 (1956), with which compare Johnston v. District of Columbia, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75 (1886). *See also* District of Columbia v. Caton, 48 App.D.C. 96 (1918); Sass v. District of Columbia, 114 U.S.App.D.C. 365, 316 F.2d 366 (1963); and Elliott v. District of Columbia, 82 U.S.App.D.C. 64, 160 F.2d 386 (1947).

As long ago as 1861, the United States Supreme Court held the District Government answerable in tort for the negligent

construction of a bridge, Weightman v. Corporation of Washington, 66 U.S. (1 Black) 39, 17 L.Ed. 52 (1861); and, as recently as Urow v. District of Columbia, Note 1 *supra*, this court echoed the *Weightman* distinction between a "discretionary" or "legislative" function, on the one hand, and a "ministerial" act, on the other. For other expressions of the U. S. Supreme Court on the matter of municipal immunity in tort for the District Government, *see* Barnes v. District of Columbia, 91 U.S. 540, 23 L.Ed. 440 (1875), Johnston v. District of Columbia, 118 U.S. 19, 6 S.Ct. 923 (1886), and District of Columbia v. Woodbury, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472 (1890). Our cases ultimately came to rest upon so-called exceptions for nuisances and street maintenance, but it was not pretended that these exceptions were founded upon any view of the activities in question as non-governmental. *See* Smith v. District of Columbia, 89 U.S.App.D.C. 7, 189 F.2d 671 (1951).

inquiry into the question of whether the District Government was immune from suit. We looked to the facts giving rise to the injury, and concluded that the keeping in repair of a guardrail on a school playground, although obviously a governmental function, was not of such a nature as to pose threats to the quality and efficiency of government in the District if liability in tort was made the consequence of negligent act or omission. We did not believe that the provision of public education in the District would be undermined by making the District answerable in tort for failing to maintain the school playgrounds properly. We doubted that seeing that a fence needed fixing involved "the performance of functions calling for the highest degrees of discretion and judgment," and it was the latter which we conceived to be the proper objects of solicitude of the court-created concept of municipal immunity.

The error of the District Court in the case before us resides in its apparent allegiance to *Calomeris* rather than to *Elgin.* Each, in the broad sense of "governmental" versus "proprietary," involved the former. Neither, in the narrower terminology of "ministerial" versus "discretionary," involved the latter. And we perceive no distinctions between the operation of hospitals, on the one hand, and schools, on the other, that offer meaningful bases for differentiation in the imposition of tort liability for acts of the kind alleged in those cases and in the one before us. We do not, therefore, consider *Calomeris* as retaining the authority to command the result reached by the District Court, and we hold that *Elgin* pointed ineluctably towards denial of the motion to dismiss to the degree

that that motion was grounded upon municipal immunity.

## II

In reaching the result we do by reference to *Elgin,* we confront both (1) appellee's argument that only Congress may abolish the tort immunity of the District Government, and (2) the view expressed in concurrence in *Elgin* that that decision does not go far enough because it fails to effect such abolition. In commenting upon these contrasting stances towards municipal immunity, it may be useful to take a hard look first at what is customarily subsumed under the rubric of "abolition."

Professor Davis, surely one of the sternest and most relentless critics of immunity, has characterized Elgin as being "as complete an abolition of the doctrine of sovereign immunity from tort liability as any judicial opinion that has been written by any of the state courts that have abolished that doctrine." [3] Chief Judge Bazelon, by contrast, lamented in *Elgin* its failure to achieve abolition, and looked longingly towards decisions of the California Supreme Court which Professor Davis cites as stellar items in his catalogue of state court abrogations of the offending doctrine.[4] These differing degrees of rapture evoked by *Elgin* from two able observers sharing the same objectives suggests that there must be some ambiguity in the concept of abolition.

Of course, if what is meant by that term is the abandonment of the "governmental-proprietary" distinction and of the concomitant readiness of the courts to bar suit whenever the sovereign is found to be acting in the former

3. K. Davis 3 Administrative Law Treatise, § 25.01 at p. 107 (1965 Pocket Part). The literature of attack upon the inadequacies and injustices of immunity founded upon the "governmental-proprietary" distinction is as extensive as it is unanswerable. Professor Davis, like other critics, can summon the most respectable authority for his assertion that that distinction "is probably one of the most un-

satisfactory known to the law * * *" § 25.07 at p. 460 (1958).

4. Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal.Rptr. 97, 359 P.2d 465 (1961). The cases are discussed at 3 Davis, *supra* note 3 at § 25.01, pp. 98–101 (1965 Pocket Part).

capacity, then *Elgin* may be deemed to have effected abolition. This would, however, be true not only of *Elgin* but of the earlier cases in this jurisdiction referred to by it in which, without the aid of any statute, this court countenanced the answerability of the District Government in tort even though there was no question but that the act or omission complained of was clearly in the context of the performance by the District of one of its characteristically public functions. By this standard we can be said to have "abolished" the immunity long ago, and to have been either obtuse or uncomprehending in our perennial incantations that only Congress could or should do that.

The truth is, presumably, that Professor Davis, Judge Bazelon, and the California Supreme Court all mean the same thing when they speak of abolition or abrogation, and that is the total rejection of the concept that the classification of a function as "governmental" ends, rather than begins, the inquiry into whether a tort action should be permitted to proceed against a public entity. The California Supreme Court in *Muskopf* said that "[a]brogation of governmental immunity does not mean that the state is liable for all harms that result from its activities"; and, in the companion case of *Lipman,* it observed that *Muskopf* was far from holding "that a public body has no immunity where the discretionary conduct of governmental officials is involved." In *Lipman* the

Court held that the acts in question "were of a discretionary character," and that, because there is a vital public interest in the "free and independent judgment" of public officials, the school district there sought to be sued was immune.[5]

In regarding *Elgin* as determinative here, we do neither more nor less than has been done by the growing number of state courts which are customarily categorized as having "abolished" municipal immunity in tort. *See* K. Davis, *supra* Note 3, at § 25.01. Perhaps more significantly, we do nothing essentially different in kind from what was done on occasion in this jurisdiction long before *Elgin.* We do not expose the District Government to liability in tort for every conceivable injury resulting from the performance of its functions.

■ We do reaffirm, for the purpose of a claim of medical malpractice in a District hospital, the position we took in *Elgin*—which was, we repeat, not without precedent in this jurisdiction—that a plaintiff is not automatically out of court whenever it appears that the injury grew out of the operation by the District of a school, or a hospital, or in the course of any other activity carried on by the District because it is a government. In these self-same activities there are situations where wise considerations of public policy will readily suggest the undesirability of subjecting the District to suit.[6] Until the Congress addresses

5. *Lipman* involved a claim for defamation brought against a school district and certain of its officers. The district was held immune from suit because the officers were acting in a discretionary role when the words complained of were uttered, but the suit was permitted to proceed against the officer-defendants because they exceeded the scope of their authority in making the statements to the press.

*Muskopf* and *Lipman* occasioned a comprehensive study of the immunity problem by the California Law Revision Commission which eventuated in the enactment by the California Legislature in 1963 of a thorough-going statute on the

"Liability of Public Entities." Cal. Gov't Code § 815 *et seq.* (West 1964). The scheme of the statute generally may be described as abolishing all common law tort liability for public entities whether the function in question be "proprietary" or "governmental," and prescribing by statute those circumstances in which such liability may be asserted.

6. As *Elgin* remarked, *Urow, supra* Note 1, was just such a case. There, although professing an incapacity to do anything about the District Government's immunity in tort in the absence of Congressional action, we analyzed the claim presented in terms of a "discretionary—

itself to a comprehensive effort to identify the foundations of liability more particularly, it will be for the courts here, as they are doing elsewhere, to make these discriminating judgments. *See, e. g.,* Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960).

■ To the argument of appellee that we should await Congressional action, the answer is that the issue is not one of our *power* to act. As, *en banc,* we hereby provide a formal interment of the "governmental-proprietary" test of immunity, we flout no visible purpose or policy of Congress but, rather, only bury one of our own offspring—one whom we periodically treated as illegitimate well in advance of *Elgin.* As to the *policy* of what we do, we see no virtue in staying our hand until Congress chooses to recognize formally that *we* have changed the direction of a course that *we* set long ago.

It is said that we should heed the failure of Congress to include the District of Columbia under the Federal Tort Claims Act (28 U.S.C. § 2671 *et seq.*) as a sign of a legislative purpose to maintain tort immunity for the District in full vigor. But there is nothing in the legislative record of that statute to indicate such a purpose, and the omission is as logically explicable on the theory that Congress was satisfied with the developing state of the law in this jurisdiction which, as we have seen, was not without its rejections of the purely "governmental" test. To the extent that, in *Elgin* and here, we recognize the significance of the discretionary factor in the determination of the availability of immunity, we note the central place of importance given by Congress to this element in the Tort Claims Act.[7] The end of the journey we reach today in the case of the District Government is, thus, not unlike the beginning of the one initiated by the Congress in 1948 for the Federal Government.

The judgment of the District Court is reversed and the case remanded with directions to reinstate the complaint.

It is so ordered.

PRETTYMAN, Senior Circuit Judge (concurring):

I oppose with all possible emphasis the suggestion that the court attempt to eliminate sovereign immunity from among the defenses available to the Government in tort cases in this jurisdiction. I think that to be a matter of legislative policy rather than a judicial question. But the immunity of the local municipal corporation from liability for torts committed by it or its agents in the course of the performance of duties imposed by statute is quite a different thing. It does not involve sovereignty in the classic sense; it is a problem concerning municipal functions and the liability therefor. I see no reason why a court should not construe and apply the latter.

I am authorized to say that Senior Circuit Judge DANAHER concurs in the foregoing statement.

WRIGHT, Circuit Judge, with whom Chief Judge BAZELON joins, concurring:

Appellant alleges that he, a paying patient, was injured by the negligent performance upon him of a discography operation by D.C. General Hospital. His suit has been dismissed on the pleadings in reliance on this court's *Calomeris* de-

ministerial" test, and concluded that the District should not be subject to suit in any event.

7. First among the exceptions to liability provided by 28 U.S.C. § 2680 is the following:

"Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

cision,[1] which held that the District of Columbia government operates the hospital as a "governmental" rather than a "proprietary" function, and hence is immune from liability for its negligence. I agree with Judge McGowan's excellent opinion holding that our *Elgin* decision [2] requires that *Calomeris* be overruled and that appellant here be allowed to go to trial. I suggest further that *Elgin* is but a way station on the road to complete rejection of the doctrine of sovereign immunity.

## I

At the time *Calomeris* was decided, a substantial line of cases had established the general proposition that the District of Columbia, like other municipalities, was liable for torts committed in the exercise of its "proprietary," but not in the exercise of its "governmental," functions.[3] In bare outline, the "governmental-proprietary" rule attempts to distinguish between municipal activities which are inherently public in nature, and those which merely supplant or parallel the workings of the private sector. The rule makes a "vertical" classification of activities, in the sense that broad spheres of official concern—such as education, police and fire protection, hospitals and other health activities, garbage collection, maintenance of streets and sidewalks, sewage, and provision of water, electricity and transportation—are each labeled either "governmental" or "proprietary." Once a service is classified as "governmental," the city is immune from liability for torts committed on any level in the provision of the service.

The distinction between "governmental" and "proprietary" functions of government for purposes of tort immunity has been almost universally condemned. In the words of Harper and James: "No satisfactory test has been devised

---

1. Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955).

2. Elgin v. District of Columbia, 119 U.S. App.D.C. 116, 337 F.2d 152 (1964).

3. Roth v. District of Columbia, 16 App. D.C. 323 (1900) (dictum) ; Brown v. District of Columbia, 29 App.D.C. 273, 25 L.R.A.,N.S., 98 (1907) ; District of Columbia v. Tyrell, 41 App.D.C. 463 (1914) ; District of Columbia v. May, 63 App.D.C. 10, 68 F.2d 755 (1933) ; Loube v. District of Columbia, 67 App. D.C. 322, 92 F.2d 473 (1937) ; Wilson v. District of Columbia, 86 U.S.App.D.C. 28, 179 F.2d 44 (1949).

However, cases in this jurisdiction are by no means unanimous in applying the "governmental-proprietary" distinction. In the first case involving the District's liability in tort, the Supreme Court found no municipal immunity for negligent construction of a bridge; it distinguished between the "legislative" or "discretionary" powers of the city and its "specific and clearly defined duty." Weightman v. Corporation of Washington, 66 U.S. (1 Black) 39, 50, 17 L.Ed. 52 (1861). In Barnes v. District of Columbia, 91 U.S. (1 Otto) 540, 23 L.Ed. 440 (1875), the Court found the District liable for negligent maintenance of a street, and stated the general proposition that "a city is responsible for its mere negligence," without restricting its holding to street maintenance. *Id.* at 551. In Johnston v. District of Columbia, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed.2d 75 (1886), the Court restricted municipal immunity to "duties * * * of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion * * *." *Id.* at 20–21, 6 S.Ct. at 924. Finally, in District of Columbia v. Caton, 48 App.D.C. 96 (1918), the District was held liable for negligent maintenance of the streets on the general principle that "[i]n selecting and adopting a general plan of public improvement, such, for example, as a sewer system, the municipal corporation exercises judicial discretion, but in carrying out the plan it acts ministerially, and must perform the work in a reasonably safe and skilful manner." *Id.* at 104–105.

Further, exceptions have been recognized to the rule of governmental immunity in the case of street maintenance, Smith v. District of Columbia, 89 U.S. App.D.C. 7, 189 F.2d 671 (1951), and in cases where the tort could be classified as a "nuisance," Roth v. District of Columbia, *supra.* The "street maintenance" exception effectively isolated the earlier Supreme Court precedents which happened to involve streets and bridges but which stated principles of municipal immunity in general terms.

for distinguishing governmental from proprietary functions." [4] And Professor Davis has argued: "The [proprietary-governmental] distinction is probably one of the most unsatisfactory known to the law * * *." [5] The Supreme Court has referred to the " 'non-governmental'—'governmental' quagmire that has long plagued the law of municipal corporations," and has condemned the distinction as "inherently unsound." [6]

There is on the face of it little logic in the "governmental-proprietary" distinction. As Harper and James note, two criteria are most often put forward as marking the boundary between the two concepts.[7] The first is whether a service is performed for the public good or for the profit of the municipality—a criterion which usually reduces to an inquiry whether the government attempts to cover the costs of the service by levying a charge for it.[8] The criterion is unsatisfying. It is not apparent why the fact that a government pays for a service out of general tax revenues, rather than out of a charge (or tax) falling upon those directly using the service, should insulate the government from compensating the victims of its tortious conduct in providing the service.

The second criterion advanced is whether the service provided is "traditionally" governmental.[9] Since all the functions performed by municipalities could be, and at one time or another have been, left to the private sector,[10] this means no more than that cities are more likely to be held immune from paying for their torts in areas in which they have long been active—like police and fire protection—than in areas of more recent public concern. The rationale behind such a "grandfather clause" approach remains a mystery.[11]

Dissatisfaction with the law of municipal immunity does not rest solely on the illogic of the distinctions made in the area. It stems further from discontent with the whole concept of a broad sovereign immunity in tort, whether for local, state or national governments. Few doctrines in the law have sustained such voluminous, searching and nearly unanimous attack as the principle that governments should not respond in dam-

---

4. 2 F. Harper & F. James, The Law of Torts § 29.6 at 1621 (1956).

5. 3 K. C. Davis, Administrative Law Treatise § 25.07 at 460 (1958).

6. Indian Towing Co. v. United States, 350 U.S. 61, 65, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Cf. Brush v. Commissioner of Internal Revenue, 300 U.S. 352, 362, 57 S.Ct. 495, 81 L.Ed. 691 (1937). These expressions of discontent with the "proprietary-governmental" distinction would seem to remove whatever precedential constraint might be thought to be placed on our power to abolish it by Harris v. District of Columbia, 256 U.S. 650, 41 S. Ct. 610, 65 L.Ed. 1146 (1921), in which the Supreme Court arguably applied the distinction to the District of Columbia. Moreover, the Supreme Court's contemporary policy of leaving matters of local law to this court for final resolution, see Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Comm., 393 U.S. 186, 196, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968) (dissenting opinion of Mr. Justice Douglas), and cases therein cited, would seem to relieve Harris of force as a binding precedent.

7. 2 F. Harper & F. James, supra Note 4, at 1621–1623.

8. Cf. Bolster v. City of Lawrence, 225 Mass. 387, 390, 114 N.E. 722, 724, L.R.A. 1917B, 1285 (1917).

9. Cf. Hill v. City of Boston, 122 Mass. 344, 369 (1877).

10. See Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test, 22 Va.L.Rev. 910, 914–915 (1936): "The London police force was not established until 1829. It is not a hundred years since fire companies were generally private and voluntary."

11. In addition to the works of Davis, Harper & James and Seasongood already noted, representative among the voluminous criticism of the governmental-proprietary distinction are Borchard, Government Liability in Tort, 34 Yale L.J. 129, 134–143 (1924), and Fuller & Casner, Municipal Tort Liability in Operation, 54 Harv.L.Rev. 437, 443 (1941).

ages for their torts.[12] The principle has been examined and found without basis in history properly interpreted, in political theory, or in sound public policy.

The notion that governmental immunity in tort properly derives from the English common law principle that "the King can do no wrong" has been shown to rest on an erroneous reading of history.[13] The notion that public funds are not collected for the purpose of redressing official wrongdoing, and hence cannot be expended for that purpose, rests on the same circular and specious logic which has been rejected by the courts in the area of charitable immunity.[14] And finally the bald policy conclusion that "it. is better that an individual should sustain an injury than that the public should suffer an inconvenience" [15] runs counter to both the traditional tort principle that *vis-a-vis* the innocent victim the wrongdoer should pay, and modern tort concepts of risk distribution and cost allocation.[16]

When in the course of performing their functions governments lawfully acquire goods and services, they are expected to pay the costs. No one has ever given an adequate argument why the same governments should not *a fortiori* pay the costs when in performing the same functions they wrongfully injure innocent people.

The doctrines of sovereign and municipal immunity were made by judges as part of the common law.[17] Legislatures have generally not imposed immunity; rather they have more often limited it in piecemeal fashion where it was felt to be particularly egregious or impolitic.[18] However, it is only since 1955—the date of *Calomeris*—that courts have stopped bemoaning the bad doctrines which they created in the first place,[19] and have begun the serious task

12. *See, e. g.*, Borchard, Government Liability in Tort, 34 Yale L.J. 1, 129, 229 (1924–1925) ; Borchard, Governmental Responsibility in Tort, VI, 36 Yale L.J. 1, 747(V), 1030(VI) (1926–1927) ; 3 K. C. Davis, *supra* Note 5, § 25.01; 2 F. Harper & F. James, *supra* Note 4, ch. 29 *passim*.

13. *See, e. g.*, Borchard, *supra* Note 12, 36 Yale L.J. at 1, 17–41.

14. *See, e. g.*, 2 F. Harper & F. James, *supra* Note 4, at 1611–1612; *cf.* President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810 (1942) (Rutledge, J.).

15. Russell v. The Men of Devon, 100 Eng. Rep. 359, 362 (1788).

16. *See* 2 F. Harper & F. James, *supra* Note 4, at 1612; Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961) (Traynor, J.).

17. *See generally* Borchard, *supra* Note 12, 36 Yale L.J. 1; *cf.* Muskopf v. Corning Hospital District, *supra* Note 16, 11 Cal. Rptr. 89, 359 P.2d at 461. No District of Columbia statute imposes sovereign immunity. In the past courts have argued that in failing to include the District within the terms of the Federal Tort Claims Act, *see* Douffas v. Johnson, D. D.C., 83 F.Supp. 644 (1949), Congress meant to maintain the immunity of the

District. Calomeris v. District of Columbia, *supra* Note 1, 96 U.S.App.D.C. at 366, 226 F.2d at 268. But no such intent appears from the face of the legislation, and no showing has been made of such an intent in the legislative history. The more plausible interpretation is that, in enacting the FTCA, Congress was simply not concerned with the local law of the District.

18. The District of Columbia has statutorily waived immunity for automobile torts committed by its employees within the scope of their employment. 1 D.C. Code § 922 (1967). It further provides for settlement of claims against the District arising out of the negligence of District employees, "irrespective of whether such negligence occurred or such acts were done in the performance of a municipal or a governmental function of said District * * *." 1 D.C.Code § 902(a) (1967). This provision was construed as authorizing *suit* against the District for the negligence of a police officer in Harbin v. District of Columbia, 119 U.S.App.D.C. 31, 336 F.2d 950 (1964).

19. In *Calomeris* we referred to sovereign immunity as "an obsolescent and dying doctrine," but left it to the legislature to eliminate or reform it. 96 U.S.App.D.C. at 366, 226 F.2d at 268.

of reforming them. In the last decade, the highest courts of at least 12 states have broadly abrogated the immunity in tort of the cities or the states or both.[20] In fewer states have the traditional immunities been explicitly reaffirmed.[21]

In this jurisdiction, the movement against sovereign—here municipal—immunity found expression in the *Elgin* case.[22] In *Elgin*, plaintiff alleged personal injury from a fall caused by negligent construction or maintenance of the playground at his school. The court recognized that operation of schools had been regarded as a "governmental" function in this as in other jurisdictions.[23] It did not dispute that characterization, but rather reformulated the distinction between areas in which the government is immune in tort and areas in which it may be liable.

Drawing on two recent cases,[24] the court discerned a shift from a "governmental-proprietary" to a "discretionary-ministerial" distinction.[25] Where the previous distinction had rested on a vertical classification of broad areas of activity—education, sanitation, care of the sick, etc.—as "governmental" or "proprietary," the new distinction was a horizontal one which cut across these broad areas, and looked with more particularity at the act or omission complained of as negligent. Where the injury proximately resulted from a deliberate choice in the formulation of official policy, characterized by a high "degree of discretion and judgment involved in the particular governmental act," [26] immunity would remain. To inquire into such decisions in a tort suit might "jeopardiz[e] the quality and efficiency of government itself," [27] and endanger the creative exercise of political discretion and judgment through "the inhibiting influence of potential legal liability asserted with the advantage of hindsight." [28] On the other hand, where the injury was inflicted by negligent official acts or omissions other than in the formulation of public policy—"ministerial acts"—liability could be asserted. Thus in "the execu-

---

20. Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193 (1957) ; Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959) ; McAndrew v. Mularchuk, 33 N.J. 172, 162 A.2d 820, 88 A.L.R.2d 1313 (1960) ; Muskopf v. Corning Hospital District, *supra* Note 16; Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961) ; Holytz v. City of Milwaukee, 17 Wis.2d 26, 115, N.W.2d 618 (1962) ; Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962) ; Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963) ; Rice v. Clark County, 79 Nev. 253, 382 P.2d 605 (1963) ; Haney v. City of Lexington, Ky., 386 S.W.2d 738, 10 A.L.R.3d 1362 (1964) ; Kelso v. City of Tacoma, 63 Wash.2d 913, 390 P.2d 2 (1964) (abrogation partly based on statute).

21. *See, e. g.,* Nelson v. Maine Turnpike Authority, 157 Me. 174, 184–186, 170 A.2d 687, 693 (1961) ; State of Utah By & Through Road Commission v. Parker, 13 Utah 2d 65, 368 P.2d 585 (1962) ; Clark v. Ruidoso-Hondo Valley Hospital, 72 N.M. 9, 380 P.2d 168 (1963).

The cases on both sides are collected and summarized in 3 K. C. Davis, *supra* Note 5, § 25.04 (1965 Pocket Part).

22. *Supra* Note 2.

23. District of Columbia v. Tyrrell, *supra* Note 3.

24. Booth v. District of Columbia, 100 U.S. App.D.C. 32, 241 F.2d 437 (1956) (District not liable for general failure to provide adequate sewer system, but may be liable for inadequate construction of sewer) ; Urow v. District of Columbia, 114 U.S.App.D.C. 350, 316 F.2d 351, cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963) (city not liable for failure to provide traffic light because decision "essentially legislative").

25. Elgin v. District of Columbia, *supra* Note 2, 119 U.S.App.D.C. at 118, 337 F.2d at 154.

26. 119 U.S.App.D.C. at 119, 337 F.2d at 155.

27. 119 U.S.App.D.C. at 118, 337 F.2d at 154.

28. 119 U.S.App.D.C. at 119, 337 F.2d at 155.

tion of policy as distinct from its formulation," [29] the District of Columbia could be held to the duty of reasonable care which the courts had long enforced against individuals and private associations.[30]

In my view, the principle of *Elgin* requires that appellant in this case be allowed to proceed to trial. He has alleged that appellee negligently performed upon him a discography operation, resulting in serious personal injuries. Thus his is a commonplace suit for a single act of medical malpractice. He does not require us to review policy decisions taken by responsible officials of the District of Columbia in the area of health. Those policies, which are not in question here, include accepting patients like appellant at the hospital, and performing operations of this type upon them. That policy was applied in this case. Appellant alleges that in the course of carrying it out the hospital medical staff failed to meet the standards of due care imposed by local tort law upon the medical profession. Thus the complaint here is of a fault in execution, of a kind which our courts evaluate many times a year. Within the meaning of *Elgin*, such faults are ministerial, and hence subject to redress in tort.

This is not to say that the performance of an operation does not involve judgment and discretion. The point is that *medical*, not *governmental*, judgment and discretion are involved. The common law of malpractice, as normally applied to private doctors and hospitals, already grants the leeway properly left for expert judgment in the relatively stringent requirements it imposes upon plaintiffs in medical negligence suits. No further leeway is required for the publicly employed doctor or the public hospital than for their private counterparts.

## II

Although I am convinced that *Elgin* stands as a four-square precedent requiring reversal in the case before us, I should add that in my view it marks the beginning rather than the end of the reform of our law of municipal immunity. The court in *Elgin* felt that recent panel decisions of this court constrained it from considering whether the tort immunity of the District of Columbia should be entirely abrogated.[31] Thus the court felt required to preserve a category of "governmental" or "discretionary" acts which were to be held immune from damages for a breach of the duty of reasonable care.

Concurring in *Elgin*, Chief Judge Bazelon noted that the decision took "a useful step toward modernizing the archaic doctrine of sovereign immunity." [32] He went on to point out that "[i]n retaining a rigid classification of cases, however, it harbors seeds of the same arbitrariness which presently characterizes that doctrine." [33] He would have preferred that the degree of discretion left to officials in the performance of their duties be merely one factor to be weighed in the calculus of "reasonable care."

I believe that Chief Judge Bazelon's more flexible rule is the proper one. I would entirely abolish any special governmental immunity in tort. There would then remain the determination of which governmental actions causing private injury were tortious. It is clear that not all of them can be. Almost every act of government involves injury to someone, and yet "it is not a tort for

---

29. 119 U.S.App.D.C. at 118–119, 337 F.2d at 154–155.

30. The substantial break which *Elgin* represented with the old "governmental-proprietary" distinction led Professor Davis to list it among those decisions abolishing municipal immunity. 3 K. C. Davis, *supra* Note 5, § 25.01 (1965 Pocket Part).

31. 119 U.S.App.D.C. at 117 n. 2, 337 F.2d at 153 n. 2.

32. 119 U.S.App.D.C. at 121, 337 F.2d at 157.

33. *Ibid.*

government to govern." [34]  It is in drawing the line between tortious and non-tortious injuries from official action that courts can take account of the important factors referred to by the court in *Elgin*.

The distinction between the two views is more than a semantic one.  The *Elgin* position could easily rigidify into a rule that any time an official or an agency adopts a "plan," injuries arising from the plan itself, as distinguished from its negligent execution, cannot be compensated in tort.[35]  I would not want to take the flat position that the government is immune from paying for the consequences of the adoption of every policy, however neglectful that policy might be of the bodily security or the property of those affected by it.

In any case, it seems to me clear that whether under the "discretionary-ministerial" principle made the law of this jurisdiction in *Elgin,* or under a regime recognizing no governmental immunity in tort, appellant here should be allowed his day in court against D.C. General Hospital.

34.  Dalehite v. United States, 346 U.S. 15, 57, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (dissenting opinion of Mr. Justice Jackson).

35.  For a discussion of the difference between a negligent plan and negligent execution of the plan, concluding that even where the negligence is part of the plan liability can result, *see* District of Columbia v. Caton, *supra* Note 3, 48 App.D.C. at 104–107.  For a similar distinction reaching an opposite result, *see* Urow v. District of Columbia, *supra* Note 24, and my dissenting opinion in that case, 114 U.S.App.D.C. at 352, 316 F.2d at 353.