James HALL, et al., Appellants,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Appellee.

No. 81–1083.

District of Columbia Court of Appeals.

Argued Sept. 6, 1983.

Decided Nov. 23, 1983.

Mark J. Brice, Landover, Md., for appellants.

Peter J. Ciano, Washington, D.C., for appellee.

Before NEBEKER and FERREN, Associate Judges, and REILLY, Chief Judge, Retired.

NEBEKER, Associate Judge:

Appellant, James R. Hall, contests the dismissal of his tort claim against appellee, Washington Metropolitan Area Transit Authority (hereinafter WMATA). As an employee of WMATA, Hall was arrested on March 21, 1979, and charged with embezzling $8.00 from a subway farecard machine. He was acquitted of the charge. On April 2, 1981, he filed this action against WMATA, alleging false arrest, malicious prosecution and abuse of process. Appellee moved for summary judgment, arguing that under the WMATA Interstate Compact it enjoyed sovereign immunity. Sum-

mary judgment was granted; appellant timely appealed. We now affirm.

## I

In this case we [1] construe a peculiar legal instrument, an interstate compact, and also consider the application of the doctrine of sovereign immunity. As regards interstate compacts, they are both contracts, having been negotiated and approved by the constituent sovereignties, as well as statutes, having been passed upon by Congress pursuant to the constitutional dictates of art. I, § 10, cl. 3. *Dyer v. Sims,* 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713 (1950).

In the WMATA case, the Compact was negotiated and executed by Virginia, Maryland and the District of Columbia and then approved by Congress. Pub.L. No. 89–774, 80 Stat. 1324 (1966). The Compact provides authorization for a mass transit authority to offer bus and rapid rail service to the metropolitan area. Concomitant protective services are authorized: the Compact, as originally enacted, allowed the WMATA transit police to exercise very limited power while the brunt of the police work fell to the member jurisdictions' own forces. *Id.* at 1349. In 1976, however, Section 76 of the Compact was amended so that WMATA could maintain a force with nearly plenary police power to protect transit passengers and property. Section 76(b), which is drawn into question in this case, provides:

Except as otherwise provided in this section, a member of the Metro Transit Police shall have the *same powers,* including the *power of arrest,* and shall be subject to the *same limitations,* including *regulatory limitations,* in the performance of his duties as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his duties. However, a member of the Metro Transit Police is authorized to carry and use only such weapons, including handguns, as are is-

sued by the Authority, and only in the performance of his duties or while on the transit facilities owned, controlled, or operated by the Authority in direct transit to and from a duty assignment. A member of the Metro Transit Police is authorized to carry such weapons only while in direct transit to and from a duty assignment and is subject to such additional limitations in the use of weapons as are imposed on the duty constituted police force for the political subdivision in which he is engaged in the performance of his duties.

Pub.L. No. 94–306, 90 Stat. 673 (1976) (emphasis added). The other Compact provision drawn into question here, Section 80, provides WMATA with the cloak of sovereign immunity:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent [sic] committed in the conduct of any *proprietary function,* in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a *governmental function.* The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

Pub.L. No. 89–774, 80 Stat. 1350 (1966) (emphasis added). Section 80 was included in the Compact as originally enacted in 1966 and its literal terms were not changed when the Compact was amended in 1976.

The appellant suggests that Section 80 must be construed in light of recent case law, with the result of denying the benefit of sovereign immunity. Alternatively, appellant urges that Section 76(b) should be read so as to amend Section 80, with the

---

1. Jurisdiction is based on our recent decision in *Qasim, et al. v. Washington Metropolitan Area*

*Transit Authority,* 455 A.2d 904 (D.C.App. 1983).

same result for WMATA. Appellee urges that the subsequent case law cannot work a judicial amendment to the Compact, and the literal terms of the Compact entitle it to claim immunity here.

## II

■ Since we are faced with a statute, our duty is to start with and remain faithful to the words of the text. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Since we are faced with a compact, we are to construe it consistent with the intent of the signatory sovereignties and Congress. *Texas v. New Mexico,* —— U.S. ——, 103 S.Ct. 2558, 2565, 77 L.Ed.2d 1 (1983); *Dyer, supra.* Section 80 is clear in that it establishes the "governmental-proprietary" analysis to determine if tort immunity is applicable. Appellant urges that the Compact be construed consistent with *Spencer v. General Hospital of the District of Columbia,* 138 U.S.App.D.C. 48, 425 F.2d 479 (1969) (en banc). In *Spencer,* the court, in applying the Federal Tort Claims Act to the District of Columbia, abandoned the governmental-proprietary test in favor of the "discretionary-ministerial" test.[2] Although the court there accurately observed that the doctrine of sovereign immunity has fallen into disfavor with many jurists and legal commentators, ours is not the province to rewrite a provision that is, at once, a statute and a contract among sovereigns. *Texas v. New Mexico, supra,* 103 S.Ct. at 2565. The instrument's language and legislative history must guide us. The statutory language is clear, and there is nothing discernible from the legislative history of Section 76(b) to support appellant's argument. 121 CONG. REC. 25,198–199, 25,200 (1975); 122 CONG. REC. 14,225, 15,116 (1976); H.R.REP. No. 379, 94th Cong., 1st Sess. 12 (1975); S.REP. No. 832, 94th Cong., 2nd Sess. 17 (1976). Moreover, there is well placed reluctance to al-

low compact modifications other than through the traditional route involving the signatory parties and Congress. *See C.T. Hellmuth & Associates, Inc. v. Washington Metropolitan Area Transit Authority,* 414 F.Supp. 408, 409 (D.Md.1976) (and cases cited therein). We are also mindful that there is ample authority for the proposition that waivers of sovereign immunity are to be read narrowly. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1940); *Kendall v. United States,* 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1833).

■ Alternatively, appellant urges that Section 76(b)'s references to "the same powers ... and ... limitations ..." should be construed so that WMATA is subject to the same tort claim "limitations" with respect to its police as is the District of Columbia with respect to its police. Appellant continues that the District would not be immune if its police acted as WMATA's police acted here. This argument fails, however, because the language of Section 76(b) refers to powers and limitations in terms of the power of and limitation regarding the making of an arrest, or the carrying of a weapon. Similarly, the provisions for promulgating rules and regulations under Section 76(b) relate not to matters such as the applicability of sovereign immunity but rather to matters concerning WMATA's internal operating procedures. Neither phrase in Section 76(b) speaks to matters comparable to sovereign immunity. Moreover, the sparse legislative history of Section 76(b) makes no mention of any intent to amend Section 80: the floor statements and committee reports support the proposition that the "powers and limitations" refer only to the power of the transit police to carry weapons and to make arrests in hot pursuit across jurisdictional boundaries. Again, in no sense is sovereign immunity considered. 121 CONG.REC. 25,198–199, 25,-200 (1975); 122 CONG.REC. 14,225, 15,116 (1976); H.R.Rep. No. 379, 94th Cong., 1st Sess. 12 (1975); S.REP. No. 832, 94th Cong.,

---

**2.** *See Johnson v. Bechtel,* 717 F.2d 574 (D.C. Cir.1983) (in a tort claim against an agent of

WMATA, Section 80's immunity protected the Transit Authority).

2nd Sess. 17 (1976). Thus, we conclude that Section 76(b) sets out the governmental-proprietary functions test as the applicable criterion.

### III

█ We must now determine whether the actions of the transit police complained of here fall into the governmental or the proprietary function. With the 1976 amendments to Section 76, the transit police became empowered to perform police functions comparable to those executed by their counterparts in the respective jurisdictions. The WMATA police were performing these functions when they arrested the appellant. Such police activities are "governmental" functions and thereby enjoy the immunity that Section 80 offers. *Savage v. District of Columbia,* 52 A.2d 120, 121 (D.C. 1947). *See Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1133, 1144 (4th Cir.1983); *Martin v. Washington Metropolitan Area Transit Authority,* 667 F.2d 435 (4th Cir.1981).

█ Finally, appellant suggests that WMATA is liable under a theory of *respondeat superior.* Section 80 provides immunity for the acts of its "employees" when they are performing a governmental function. Coupling our holding, *supra,* regarding governmental functions, with the observation that WMATA police are "employees" for the purposes of Section 80, no liability can lie based on a *respondeat superior* theory. *See Johnson v. Bechtel,* 717 F.2d 574 (D.C. Cir.1983).

Since we cannot agree that Section 80 is amended by Section 76(b) or by *Spencer, supra,* we affirm the trial court's grant of summary judgment to WMATA.

*Affirmed.*

FERREN, Associate Judge, dissenting:

I believe Section 76(b) of the WMATA Compact—a 1976 amendment—modified Section 80 of the Compact, the general sovereign immunity provision, by incorporating for WMATA the local sovereign immunity laws applicable in 1976 (and thereafter) to the police forces of the District of Columbia, Maryland, and Virginia, respectively. As a consequence, the law explicated in *Spencer v. General Hospital of the District of Columbia,* 138 U.S.App.D.C. 48, 425 F.2d 479 (1969) (en banc), abandoning the "governmental-proprietary" test in favor of the "discretionary-ministerial" test, should apply here. Under this latter test, an arrest is a ministerial function. *Wade v. District of Columbia,* 310 A.2d 857, 860 (D.C.1973) (en banc). Thus, "an arresting officer has no immunity from suit for torts committed in the course of making an arrest," *Carter v. Carlson,* 144 U.S.App.D.C. 388, 392–93, 447 F.2d 358, 362–63 (1971), *rev'd in part on grounds not relevant here, sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), and WMATA accordingly is liable as a matter of *respondeat superior. See Wade, supra,* 310 A.2d at 860; *Carter, supra,* 144 U.S.App. D.C. at 396, 447 F.2d at 366.

My colleagues, relying on the governmental-proprietary test set forth in Section 80 of the WMATA Compact, correctly note that police arrest actions are "governmental" functions. *Savage v. District of Columbia,* 52 A.2d 121 (D.C.1947). Thus, if that test were applicable, WMATA would be immune from suit here.[1] However, the 1976 Amendment to the WMATA Compact—adopted by the District of Columbia, Maryland, Virginia, and the Congress—created a Metro Transit Police force with "the same powers, including the power of arrest, and . . . subject to the same limitations, including regulatory limitations," applicable to the "police force of the political subdivision in which the Metro Transit Police member is engaged." The plain language—"same powers" and "same limitations"—bespeaks authority and related liability for

---

1. In *Martin v. Washington Metropolitan Area Transit Authority,* 667 F.2d 435 (4th Cir.1981), the United States Court of Appeals for the Fourth Circuit affirmed dismissal of a false arrest suit against WMATA on Section 80 grounds, without considering the Section 76(b) argument.

violations congruent with the authority and liability of each local jurisdiction's police force.

Counsel for WMATA agrees—as I gather my colleagues do—that the signatory states and the Congress can provide in the Compact for local differences in the sovereign immunity of the Metro Transit Police, just as they have localized the other limitations, as well as powers, of that police force. My colleagues, however, too narrowly read the "same powers" and "same limitations" language to mean only "powers and limitations in terms of the power of and limitation regarding the making of an arrest, or the carrying of a weapon," and "matters concerning WMATA's internal operating procedures." *Ante* at 972. The plain language of Section 76(b), unaided by the "sparse legislative history" *ante* at 972, refers to the "same powers, *including* the power of arrest," and to the "same limitations, *including* regulatory limitations." (Emphasis added.) The word "including" implies part of a greater whole; it does not imply the majority's restricted reading of the 1976 amendment.

I perceive no reason why Section 76(b)'s all-inclusive incorporation of the police powers and limitations of the respective local jurisdictions should be deemed to exclude the local laws on sovereign immunity. Accordingly, I respectfully dissent.