Carolyn MEFFORD, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 98–CV–50.

District of Columbia Court of Appeals.

Argued March 2, 1999.

Decided April 15, 1999.

Stephen M. Block, with whom Arthur B. Spitzer, Washington, DC, was on the brief, for appellant.

Donna M. Murasky, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN and REID, Associate Judges, and KING, Senior Judge.

KING, Senior Judge.

Appellant, Carolyn Mefford, appeals from an order granting summary judgment for the District of Columbia and denying her claim to recover for losses sustained when her property was stolen and destroyed while in the custody of the Metropolitan Police Department's ("MPD") property clerk's office. Mefford contends that the trial judge erred in concluding: (1) that the District of Columbia was not grossly negligent in maintaining the property clerk's office; and (2) that the District of Columbia was not liable under a theory of vicarious liability. We affirm.

## I. Facts

On April 7, 1993, Mefford was arrested for carrying a firearm without a license, carrying unregistered ammunition, and carrying drug paraphernalia. Her property, which included some personal items,[1] $3,709 in cash, and $22.04 in unused postage stamps, was placed in the property clerk's office at the MPD's Second District.

Sometime between April 7 and May 19, 1993, Mefford's cash was stolen, and on May 21, 1993, the property clerk's office was set on fire, destroying Mefford's remaining property. Police investigators tentatively concluded that a property clerk, MPD Officer Mark E. Mehlman, stole the money and set fire to the property clerk's office to conceal his crime. Mehlman later committed suicide;

his body was found on May 31, 1993 after he had been missing for seven days.

At the time that the money was stolen, MPD procedures required that prisoners' property be placed in a secured room; that a detailed inventory of the property be made; and that all prisoners be provided with a receipt itemizing the property received. Those procedures were followed here. In addition, only six police officers (two property clerks, one relief, and three watch commanders), had a key to the room where the property was stored. Mehlman was one of the property clerks and he had access to the property room. Mehlman, an eighteen-year veteran of the MPD, had received thirty commendations from both the public and his supervisors for his exceptional performance while a member of the MPD; he had no history of a criminal record, substance abuse, or employment problems.

Mefford filed a claim against the District of Columbia in the Small Claims Branch of the Superior Court in August 1996, pursuant to D.C.Code § 4–162 (1994 Repl.). She contended that the District was grossly negligent in maintaining the property clerk's office, or in the alternative, that the District was vicariously liable for the intentional actions of Mehlman. The District moved for summary judgment and Mefford filed a cross-motion for summary judgment.

On July 29, 1997, the trial judge issued a Memorandum Opinion and Order granting the District's motion for summary judgment and denying Mefford's motion for summary judgment. On the issue of the District's liability, the trial judge ruled that Mefford had failed to offer expert testimony to establish the applicable standard of care. Alternatively, and assuming that expert testimony was not necessary, the trial judge concluded that the District's conduct could not rise to the level of gross negligence. On the issue of vicarious liability, the trial judge concluded that D.C.Code § 4–162 precluded recovery on that theory.

---

1. These items included a green duffle bag, a wallet, some keys, a pair of eyeglasses, a check-book, a tape recorder, and fourteen cassette tapes.

## II. Standard of Review

██ Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978) (citations omitted). When reviewing an order granting summary judgment "this court conducts an independent review of the record, but the substantive standard is the same as that utilized by the trial court." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C.1994) (citation omitted). All reasonable inferences from the facts are drawn in favor of the non-moving party. *Willis, supra*, 387 A.2d at 719 (citations omitted).

## III. Gross Negligence

██ Mefford's claim is governed by D.C.Code § 4–162. That provision reads in relevant part:

> Neither the government of the District of Columbia nor any officer or employee thereof shall be liable for damage to any property ... while such property is in the custody of the Property Clerk, Metropolitan Police Department, when such custody is maintained pursuant to the requirements of law, except that the government of the District of Columbia or any such officer or employee may be liable for damage to such property as a result of gross negligence in the ... storage of such property ....

The District claims that Mefford was required to present expert testimony in order to establish the appropriate standard of care for the safeguarding of prisoners' property. *See District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C.1995); *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988). We need not decide whether in different circumstances a plaintiff would need to present the testimony of an expert to establish the appropriate standard of care for securing prisoners' property because we are satisfied, as was the trial judge, that on this record no reasonable person could conclude that the District was grossly negligent.

D.C.Code § 4–162 provides: "For the purpose of this section, the term 'gross negligence' means a willful intent to injure property, or a reckless or wanton disregard of the rights of another in his property." In construing the term "gross negligence" as used in D.C.Code § 1–1212 (1992 Repl.), a statute that, among other provisions, limits the District's liability to acts constituting gross negligence for damage caused by emergency vehicles, this court held that the plaintiff must show "that the [District] acted in disregard of a risk 'so obvious that [the District] must be taken to be aware of it and so great as to make it highly probable that harm would follow.'" *District of Columbia v. Walker*, 689 A.2d 40, 44–45 (D.C.1997) (citations omitted).[2]

In this instance, the MPD took a number of steps to ensure the security of Mefford's property, including the requirement of a detailed inventory of items stored in the locked property clerk's office and the providing of a receipt to the prisoner. Most important, however, the District restricted access to the property clerk's office to a small number of experienced and responsible police officers. Indeed, Officer Mehlman, who stole the money and set the fire, had an exemplary record while a member of the force. In taking these steps and entrusting Mehlman and the other officers with the keys to the property clerk's office, we are satisfied that no reasonable person could conclude that the police department disregarded a risk so great that it was highly probable that harm to a prisoner's property would follow. *See id.* Therefore, there was no gross negligence.

## IV. Vicarious Liability

██ Alternatively, Mefford argues that even if the District itself were not grossly negligent, the District should be held vicariously liable for the allegedly intentional actions of Mehlman, which were grossly negligent. Our reading of D.C.Code § 4–162, however, convinces us that Congress did not intend to impose vicarious liability upon the District.

---

**2.** While in *Walker* the statute itself contained no definition of the term "gross negligence," the quoted language is, if anything, less demanding than the statutory definition in § 4–162.

We start with an examination of the full text of the section itself. Its initial provision is a sweeping assertion of immunity from suit, not only as to the District but also as to the District's officers and employees. Only then does it establish an exception solely for instances where gross negligence is shown, a concept that itself bears a narrow definition. See note 2, *supra*. Thus, on its face, the exception to the statute would appear to call for a restricted interpretation, not to extend beyond the words of the statute itself.

In resolving this issue, we may usefully compare D.C.Code § 4–162 to D.C.Code § 1–1211 *et seq.* (1992 Repl.), the statutory provision establishing the District's tort liability for damages arising out of the operation of official motor vehicles by District employees. Section 1–1212 explicitly precludes the District from asserting "the defense of governmental immunity" in connection with a claim for damage to, or loss of, property caused by the negligence of a District employee when operating a District owned motor vehicle within the scope of employment.[3] That provision also immunizes a District employee from liability in any action brought to recover for damage caused by that employee's negligence. D.C.Code § 1–1213 (1992 Repl.). In short, Congress substituted the vicarious liability of the District for the liability of the employee.

By contrast, under D.C.Code § 4–162, an employee or officer of the District remains liable for the loss of property stored in the property clerk's office. We agree with the District that this provision, properly read, makes the District liable only for its own gross negligence (*e.g.*, insufficient safeguards in place, or habitual non-adherence to prescribed standards), not vicariously liable for the gross negligence of its employees or officers. Rather than substituting the liability of District employees for that of the District itself, as provided in D.C.Code §§ 1–1212 & –1213, D.C.Code § 4–162 provides that "the District of Columbia *or* any such officer *or* employee may be liable." (Emphasis added). In our view, by using the disjunctive "or," Congress intended for District employees to be held liable for their own gross negligence in these circumstances, not that the District would be held vicariously liable for an employee's gross negligence. Had Congress intended the District to be vicariously liable for the gross negligence of its employees, it would have employed statutory language like that found in D.C.Code §§ 1–1212 & –1213, which was enacted two years earlier.

Our conclusion that Congress intended to preclude vicarious liability in these circumstances is consistent with the state of the law of governmental immunity as it existed in 1962, when Congress enacted D.C.Code § 4–162. Prior to 1962, the government of the District of Columbia was generally immune from liability arising from torts committed by officers and employees of the District in the performance of their official duties. *See Capital Transit Co. v. District of Columbia,* 96 U.S.App.D.C. 199, 202, 225 F.2d 38, 41 (1955).[4] Under the doctrine of sovereign ·

---

3. As discussed above, the District is liable only for an employee's gross negligence if the motor vehicle was an "emergency" vehicle. *See* D.C.Code § 1–1212.

4. During this period, the United States Court of Appeals for the District of Columbia Circuit on several occasions made clear its view that the abolition of governmental immunity was a matter for the legislature, not the courts. *See Urow v. District of Columbia,* 114 U.S.App.D.C. 350, 351 n. 2, 316 F.2d 351, 352 n. 2 (1963); *Capital Transit, supra,* 96 U.S.App.D.C. at 202, 225 F.2d at 41; *Wilson, v. District of Columbia,* 86 U.S.App.D.C. 28, 30–31, 179 F.2d 44, 46–47 (1949). For example, in *Capital Transit, supra,* 96 U.S.App.D.C. at 202, 225 F.2d at 41, the court held that under the Financial Responsibility Act, D.C.Code § 40–403 *et seq.* (1951), which held an owner of motor vehicles liable for damage

caused when his vehicle was being operated by another with the owner's consent and specifically excluded the District from the definition of an owner, the District could not be held liable for damage caused by the operation of motor vehicles it owned. "Nothing in the Act or the legislative history serves ... to indicate any intention on the part of Congress to subject the District (*for the first time*) to liability for injuries inflicted by its vehicles in the course of carrying out a governmental function." *Id.* (emphasis added; footnote omitted). The elimination of immunity by Congress in the circumstances provided for in D.C.Code § 1–1212 followed.

We note that in 1946, Congress enacted the Federal Tort Claims Act, 60 Stat. 842 (1946). This act imposed on the federal government liability for torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1994). The

immunity as it existed at that time, the government of the District was not held liable for acts of its employees arising out of the District's "governmental" activities.[5] *See, e.g., Calomeris, supra* note 4, 96 U.S.App.D.C. at 365–66, 226 F.2d at 267–68 (holding that the operation of the District of Columbia General Hospital for the indigent was a governmental function and the District was not liable for alleged negligent injury to a patient); *Wilson, supra,* note 4, 86 U.S.App.D.C. at 30, 179 F.2d at 46 (holding plaintiffs could not recover for a slip and fall in the halls of a municipal building because the building was being maintained for a governmental purpose). The United States Court of Appeals for the District of Columbia Circuit stated that "[t]he maintenance of public schools, fire departments, systems of sewers, parks, and public buildings" were examples of what was considered governmental activities. *Loube v. District of Columbia,* 67 App.D.C. 322, 324, 92 F.2d 473, 475 (1937) (holding that the District was not liable for alleged negligent injuries to a streetcar passenger in a streetcar/garbage truck collision because collection of garbage was a governmental function).

In light of the holdings in these cases, it cannot be doubted that the protection of the property of prisoners would have been considered a governmental function. Thus, until Congress enacted § 4–162, the District would not have been liable under the common law as it then stood for damage to a prisoner's property in the custody of the police department. Because Congress did not explicitly provide for the vicarious liability of the District for the grossly negligent acts of its employees, as it did in other statutes, we are not persuaded that Congress intended to impose such liability. *See* D.C.Code § 49–301 (1997 Repl.) ("The common law ... shall

remain in force except" where inconsistent with or replaced by a statute). *See also United States v. Jackson,* 528 A.2d 1211, 1215 (D.C.1987) (holding common law principals remain in effect unless expressly repealed or modified); *O'Connor v. United States,* 399 A.2d 21, 26 (D.C.1979). We, therefore, conclude that § 4–162 bars recovery against the District under a theory of respondeat superior.

Accordingly, for the reasons stated above, the order granting summary judgment is

*Affirmed.*

---

Federal Tort Claims Act, however, did not apply to the District of Columbia. *Calomeris v. District of Columbia,* 96 U.S.App.D.C. 364, 366, 226 F.2d 266, 268 (1955) (footnote omitted). *See Wilson, supra,* 86 U.S.App.D.C. at 30–31, 179 F.2d at 46.

**5.** Subsequently, the United States Court of Appeals for the District of Columbia Circuit held that the District did not have immunity from liability for all governmental functions. *Elgin v. District of Columbia,* 119 U.S.App.D.C. 116, 120, 337 F.2d 152, 156 (1964). There, the court held

the District liable when a tort occurs because of an act that was ministerial in nature, but held the District immune when the act was discretionary. *Id.* In *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 388, 563 F.2d 462, 475 (1977), the same court stated, "The courts generally define 'discretionary' acts as those involved in the formulation of policy, while 'ministerial' acts are defined as those related to the execution of policy." *Id.* (footnote omitted).